Strafford
Nos. 2005-353
 2005-354

## PETITION OF CHAD EVANS

Argued: May 17, 2006
Opinion Issued: September 6, 2006

*Kelly A. Ayotte*, attorney general (*N. William Delker*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the petitioner.

DALIANIS, J. The petitioner, Chad Evans, challenges the constitutionality of RSA 651:58 (Supp. 2005), which permits the State to seek sentence review, arguing that it violates the *ex post facto*, due process

and double jeopardy protections of the New Hampshire Constitution and United States Constitution, and contravenes legislative intent. We deny the petition.

*I. Background*

The record supports the following facts. On December 21, 2001, a jury convicted the petitioner of reckless second-degree murder, *see* RSA 630:1-b (1996), five counts of second-degree assault, *see* RSA 631:2 (1996), endangering the welfare of a minor, *see* RSA 639:3, I (1996), and simple assault, *see* RSA 631:2-a (1996). *State v. Evans*, 150 N.H. 416, 417 (2003). On April 16, 2002, the Superior Court (*Nadeau*, J.) sentenced the petitioner to serve twenty-eight years to life on the second-degree murder charge, and suspended sentences on the felony assault and endangering charges. The State filed a petition for sentence review pursuant to RSA 651:58, I (effective January 1, 2002), as amended.

The Superior Court Sentence Review Division (division) originally dismissed the State's petition, concluding that such consideration would violate the petitioner's due process rights because he was not specifically informed at the time of sentencing of the State's right to seek sentence review. Upon a petition for writ of certiorari, we vacated the division's dismissal order because it "exceeded its jurisdiction when it ruled that granting the State's petition would violate the [petitioner's] due process rights." *Petition of the State of New Hampshire*, 150 N.H. 296, 299 (2003). The Trial Court (*Mohl*, J.) denied the petitioner's subsequent motions to dismiss and for declaratory and injunctive relief, ruling that, among other things, the petitioner's requests for rulings on constitutional claims were not ripe unless the division increased his sentence.

By order dated April 26, 2005, the division imposed a sentence of five to ten years in prison on one count of second-degree assault, consecutive to the sentence of twenty-eight years to life for second-degree murder. It imposed an additional ten-to-thirty-year sentence on another count of second-degree assault, consecutive to each of those sentences. It left the remaining sentences unchanged. Thus, the division increased the petitioner's minimum term of imprisonment from twenty-eight to forty-three years.

The petitioner asks us to vacate the division's April 26, 2005 order and reinstate the original sentence imposed by the trial court because: (1) application of RSA 651:58, I, violated his state and federal constitutional rights to due process; (2) RSA 651:58, I, on its face, violates state and federal constitutional prohibitions against double jeopardy; (3) application of RSA 651:58, I, violated state and federal constitutional prohibitions

against *ex post facto* laws; and (4) retrospective application of RSA 651:58, I, ignored rules of statutory construction.

■ As a threshold matter, we note that the petitioner filed both a petition for writ of certiorari and a discretionary notice of appeal under Supreme Court Rule 7. *See* SUP. CT. R. 7(1)(B). The applicable statutory scheme governing sentence review procedures does not provide for direct appeal of a sentence review decision. *See Petition of Guardarramos-Cepeda*, 154 N.H. 7, 8-9 (2006). Accordingly, we consider only the petition for writ of certiorari. Certiorari is an extraordinary remedy, granted not as a matter of right, but rather at the court's discretion "when the substantial ends of justice require such relief." *Petition of Turgeon*, 140 N.H. 52, 53 (1995) (quotation omitted). Certiorari review is limited to whether the agency acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. *Petition of the State of New Hampshire*, 150 N.H. at 297; *Petition of State of N.H. (State v. Theodosopoulos)*, 153 N.H. 318, 319-20 (2006).

## II. Due Process

We first review whether the application of RSA 651:58, I, violated the petitioner's state and federal constitutional rights to due process because the trial court did not provide individualized notice at the time of his sentencing of the State's right to seek sentence review. RSA 651:58, I, provides, in pertinent part:

> Any person sentenced to a term of one year or more in the state prison, . . . *or the state of New Hampshire*, may file with the clerk of the superior court for the county in which the judgment was rendered an application for review of the sentence by the review division. The application may be filed within 30 days after the date the sentence was imposed . . . .

RSA 651:58, I (Supp. 2005) (emphasis added). The division consists of three current or retired superior court justices. RSA 651:57 (1996).

■ We recently concluded that RSA 651:58, I and II provided a defendant with statutory notice of the State's right to seek a review of his sentence, and the extent to which jurisdiction was retained to either increase or decrease the imposed sentence after a hearing conducted by the division. *See Guardarramos-Cepeda*, 154 N.H. at 10-11. We thus held that RSA 651:58, I, does not violate the Due Process Clause of the New Hampshire Constitution. *Id.* at 11. We have previously recognized that the

United States Constitution offers the petitioner no greater due process protection than does the New Hampshire Constitution under circumstances similar to those before us. *Stewart v. Cunningham, Warden*, 131 N.H. 68, 70 (1988) (*citing Oyler v. Boles*, 368 U.S. 448, 452 (1962)). The petitioner does not argue to the contrary. Accordingly, we reach the same result under the United States Constitution as we do under the New Hampshire Constitution.

## III. Double Jeopardy

■ We next consider the petitioner's facial challenge to RSA 651:58, I. Specifically, he contends that the Double Jeopardy Clauses of the New Hampshire and United States Constitutions preclude the State from seeking review of a criminal defendant's sentence pursuant to RSA 651:58, I. We recently held that RSA 651:58, I, does not violate the Double Jeopardy Clause of the New Hampshire Constitution. *Guardarramos-Cepeda*, 154 N.H. at 12. Relying upon *United States v. DiFrancesco*, 449 U.S. 117 (1980), we recognized that the defendant had no "expectation of finality" until the sentence review process has concluded. *Guardarramos-Cepeda*, 154 N.H. at 12. The New Hampshire Constitution provides at least as much protection as the United States Constitution under these circumstances. *Id.* at 11-13; *United States v. DiFrancesco*, 449 U.S. at 136, 138-39. Accordingly, we reach the same result under the United States Constitution as we do under the New Hampshire Constitution.

## IV. Ex Post Facto Laws

We next review whether the claimed retrospective application of RSA 651:58, I, violated the state and federal constitutional prohibitions against *ex post facto* laws. Although the petitioner committed his offenses and was convicted prior to the effective date of amended RSA 651:58, I, the trial court sentenced him after the effective date.

Both Part I, Article 23 of the New Hampshire Constitution and Article I, Section 10 of the United States Constitution forbid *ex post facto* penal laws, *Dobbert v. Florida*, 432 U.S. 282, 292 (1977); *Petition of Hamel*, 137 N.H. 488, 494 (1993), and we have stated that both constitutions afford the same level of protection, *State v. Comeau*, 142 N.H. 84, 87 (1997). The petitioner contends, however, that the New Hampshire Constitution actually provides him greater protection than the United States Constitution, because the United States Supreme Court narrowly construed *ex post facto* prohibitions in *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), a case not before us in *Comeau*.

 We will first address the petitioner's *ex post facto* claim under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231 (1986), and cite federal opinions for guidance only. *Id.* at 232-33. A law or an application of a law is *ex post facto* if it:

> makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; or ... aggravates a crime, and makes it greater, than it was when committed; or ... changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed.

*State v. Reynolds*, 138 N.H. 519, 521 (1994) (quotation omitted). Like the federal constitutional inquiry, the focus in the state *ex post facto* analysis is not upon whether a law imposes disadvantages or additional burdens, but rather upon whether it "increases the punishment for or alters the elements of an offense, or changes the ultimate facts required to prove guilt." *Comeau*, 142 N.H. at 88 (quotation and brackets omitted). We have also distinguished a substantive change to a criminal statute, which augments the crime or increases the range of sentences that could be imposed for the charged crime, from a procedural change to a criminal statute, which, under most circumstances, does not implicate the *Ex Post Facto* Clause. *See Hamel*, 137 N.H. at 494.

> [The] substance/procedure dichotomy in *ex post facto* analysis is an attempt to reconcile the necessity for continuous legislative refinement of the criminal adjudication and corrections process with the constitutional requirement that substantial rights of a criminal defendant remain static from the time of the alleged criminal act.

*Id.* (citation and quotation omitted).

The petitioner argues that pursuant to *Reynolds*, the New Hampshire Constitution offers him greater *ex post facto* protection than does the United States Constitution under these circumstances. In *Reynolds*, we examined whether the application of a new law to the defendant's petition for a suspended sentence would violate the *Ex Post Facto* Clause of the State Constitution. *Reynolds*, 138 N.H. at 520. At the time the defendant was sentenced for second-degree murder, the law permitted her to petition to suspend her sentence every two years thereafter. *Id.* Six years later, the legislature amended the statute to preclude violent offenders from filing petitions for sentence suspension more frequently than every four years. *Id.*

Although we did not analyze whether the change to the sentence suspension statute was substantive or procedural, we examined federal

case law and held that the application of the new law to the defendant would violate the *Ex Post Facto* Clause because "the new law could operate to keep her in prison longer than the old law." *Id.* at 521. We reached this conclusion even though there was no guarantee that the defendant would have been released any sooner under the old law. *See id.* at 522.

The United States Supreme Court subsequently examined whether the retrospective application of a statute that could operate to defer parole suitability hearings violated the federal *Ex Post Facto* Clause. *Morales*, 514 U.S. at 509. The defendant in *Morales* committed murders in 1971 and 1980. *Id.* at 502. At that time, a statute entitled him to annual parole suitability hearings. *Id.* at 503. The California legislature later amended the statute to authorize the parole board to defer subsequent suitability hearings for up to three years for convicted multiple murderers, such as Morales. *Id.* Upon federal habeas corpus review, he argued that retrospective application of the amended parole eligibility statute violated the *Ex Post Facto* Clause because it increased the "standard of punishment" applicable to his crimes. *Id.* at 504-05.

The amended parole statute did not change the sentencing range applicable to the covered crimes; it simply altered the method to be followed in fixing a parole release date using substantive standards identical to those of its predecessor. *Id.* at 507-08. The Court acknowledged, however, that the retroactive application of such a law could violate the *Ex Post Facto* Clause if the law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. The Court held that the decrease in the frequency of parole suitability proceedings "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* It reasoned that, among other things, the amended parole statute was remedial in purpose and the parole board was required to make a special finding before depriving an inmate of an annual hearing. *Id.* at 510-14.

We have not heretofore been called upon to analyze the state constitutional prohibition against *ex post facto* laws in light of *Morales*. The State argues that *Morales* undermines both the analysis and the holding in *Reynolds*. Assuming without deciding that *Reynolds* is still good law, it is, in a manner akin to *Morales*, factually distinguishable from the case before us. The statutory changes in those cases occurred long after the sentences were imposed and concerned the availability of parole suitability and sentence suspension hearings. Insofar as federal case law has regularly informed our application of the state *Ex Post Facto* Clause, *see, e.g., Reynolds*, 138 N.H. at 522-23, we will examine opinions

addressing whether the retrospective application of a federal sentence review statute, which allowed the government to seek *de novo* review of criminal sentences, violated the federal *Ex Post Facto* Clause.

Title 18, section 3742 of the United States Code provides a defendant and the government with the right to appeal a sentence under various circumstances. 18 U.S.C. § 3742(a), (b) (2000). Prior to 2003, a federal court of appeals reviewed a district court's factual findings for clear error and reviewed its decision to depart from the sentencing guidelines for abuse of discretion while affording "substantial deference" to the district court. *Koon v. United States*, 518 U.S. 81, 97-99 (1996). In 2003, however, Congress amended section 3742(e) to provide that while appellate courts would still review factual findings for clear error, they would review *de novo* the district court's application of the sentencing guidelines. 18 U.S.C. § 3742(e) (Supp. 2003). With the exception of the Third and Sixth Circuit Court of Appeals, which have not addressed the issue, every federal circuit court of appeals has held that section 3742(e), as amended, could be applied retrospectively without constitutional disability. *See, e.g., United States v. Riley*, 376 F.3d 1160, 1164-65 n.3 (D.C. Cir. 2003) (listing all circuit court decisions). Several circuits specifically have held that the retrospective application of amended section 3742(e) did not implicate the *Ex Post Facto* Clause because the amendment made only a procedural, and not a substantive, change in the law. *See United States v. Stockton*, 349 F.3d 755, 764 n.4 (4th Cir. 2003), *cert. denied*, 541 U.S. 953 (2004); *United States v. Mallon*, 345 F.3d 943, 946-47 (7th Cir. 2003); *United States v. Andrews*, 447 F.3d 806, 809-10 (10th Cir. 2006); *Riley*, 376 F.3d at 1165. None of the circuit courts has referenced *Morales*.

We find the reasoning employed by the Seventh Circuit Court of Appeals in *Mallon* particularly instructive on the issue before us. In *Mallon*, the defendant pleaded guilty to the crime of "using the means of interstate and international communication in an effort to entice a female under the age of 18 to engage in sexual activity." *Mallon*, 345 F.3d at 944. The district court sentenced the defendant to twenty-one months' imprisonment, which was a significant downward departure from the sentencing range of forty-one to fifty-one months' imprisonment. *Id.* The government appealed the downward departure. *Id.* at 944-45. At the time that the defendant committed his offense, the appellate court reviewed such an issue for abuse of discretion. *Id.* at 945; *see also* 18 U.S.C. § 3742(e) (2000) (amended 2003). Subsequent to his conviction, however, Congress adopted the new *de novo* standard of review. *Mallon*, 345 F.3d at 945.

The defendant argued that retrospective application of the new standard of review would violate the *Ex Post Facto* Clause because it "would alter the consequences of his completed criminal conduct." *Id.* at 946. In

rejecting his contention, the Seventh Circuit reasoned that amended section 3742(e):

> d[id] not change the statutory penalties for [the] crime, affect the calculation of the Guidelines range, or alter the circumstances under which departures are permitted. It change[d] *who* within the federal judiciary makes a particular decision, but not the legal standards for that decision. Instead of one district judge, three appellate judges now decide whether a departure is justified. An increase in the number of judges who must consider an issue reduces the variance of decisionmaking but should not affect the mean or median outcome.

*Id.* It further reasoned that the *Ex Post Facto* Clause applied only to penal legislation, which encompasses four traditional categories, and that "[t]he punishment that 'the law' annexed to [the defendant's] crime—which is to say, the statutory maximum—is unchanged." *Id.* "Procedural innovations that don't tinker with substance as a side effect are compatible with the ex post facto clause." *Id.* The Seventh Circuit, thus, held that amended section 3742(e) was procedural only and could be applied retrospectively upon sentence review. *Id.* at 947.

The Supreme Court later struck down the portion of 18 U.S.C.A. § 3553(b) (Supp. 2006) making the sentencing guidelines mandatory and, accordingly, excised from section 3742(e) the provision setting forth the *de novo* standard of sentence review. *United States v. Booker*, 543 U.S. 220, 245, 260-62 (2005). It adopted "unreasonableness" as the new standard of sentence review. *Id.* at 260-61. It said nothing, however, to undermine the circuit courts' holdings that retrospective application of a *de novo* standard of review to sentencing decisions produced no *ex post facto* violation. *See Andrews*, 447 F.3d at 809-10 (recognizing, in post-*Booker* decision, that defendant suffered no *ex post facto* violation by application of former *de novo* standard of sentence review). Nor did the Supreme Court suggest the circuit courts erred by not relying upon *Morales* in analyzing this issue.

Former section 3742(e) and RSA 651:58, I, are similar in practical effect. The petitioner argues that RSA 651:58, I, as amended, "gave the State two chances at obtaining the sentence it desired, one at the sentencing hearing, and another before the Division." With the imposition of a *de novo* standard of review, however, former section 3742(e) operated to the same end. Although both statutes afforded the reviewing tribunal broad discretion to modify a sentence, they also prohibited it from considering any material or facts not considered by the original sentencing court at the time of sentencing. *See* 18 U.S.C. § 3742(d) (2000); SUPER. CT. SENTENCE

REV. DIV. R. 15-16. Neither statute altered the definition of underlying offenses, increased the sentencing range for which a defendant was eligible as a result of a conviction, or eliminated any applicable defense. Thus, under either statute, a defendant was subject to the same potential punishment at both his original sentencing hearing *and* before the reviewing tribunal.

■ In a manner akin to former section 3742(e), RSA 651:58 merely changed *who* made the final sentencing decision, but not the legal standards for that decision. *See Mallon*, 345 F.3d at 946. Instead of one superior court judge, three current or retired superior court judges are empowered to decide finally the defendant's sentence. *See* RSA 651:57. We, therefore, conclude that the amendment to RSA 651:58, I, created only a procedural change in the statute, and that the division's enhancement of the trial court's sentence did not "inflict[] greater punishment, than the law annexed to the crime when committed." *Reynolds*, 138 N.H. at 521 (quotation omitted).

The petitioner also contends that applying RSA 651:58, I, violates the *Ex Post Facto* Clause because the amendment is "punitive in both its purpose and its effect." Specifically, he contends that the primary purpose of RSA 651:58, I, is "to create an avenue through which the State may seek an increase in the amount of time an inmate spends in prison, in relation to the sentence he received from his trial judge." The State counters that the purpose of the amended statute is purely remedial, and that the sentence review process, whether requested by the defendant or the State, is "intended to create greater uniformity among sentences . . . [in that] the [division] is empowered to lower the sentence, increase the sentence, change the sentence in some other way, or leave the sentence unchanged."

■ We agree with the State that the purpose of amended RSA 651:58, I, is remedial rather than punitive. In 1975, the legislature established the division in order to permit a criminal defendant in superior court to request sentence review. Laws 1975, 267:1. The legislature created the division to address a perceived inconsistency in sentencing within the state. *Turgeon*, 140 N.H. at 54. The legislature intended the division "to make sure that the same crime fit[] the same sentence" and not otherwise. *Id.* In 2001, the legislature amended RSA 651:58, I, to permit the State also to apply for sentence review. Laws 2001, 45:1. While we recognize that the State might be unlikely to seek a sentence reduction, RSA 651:58, I, is silent concerning the purpose of the amendment and the legislative history reveals the State requested the amendment because there were "times when the [State] believe[d] that the sentence [wa]s too severe, or too light." N.H.S. JOUR. 61-62 (2001). There is nothing in the text of RSA

651:58 or the legislative history that suggests that the purpose of the statute is punitive. To the contrary, the legislative history indicates that the purpose of both RSA 651:58, I, and its 2001 amendment, was to achieve greater uniformity in sentencing, which, under some circumstances, could benefit a defendant. *See Turgeon*, 140 N.H. at 54. Accordingly, we hold that application of RSA 651:58, I, to the petitioner did not violate the *Ex Post Facto* Clause of the New Hampshire Constitution.

The petitioner acknowledges that the United States Constitution offers him no greater protection than does the New Hampshire Constitution under these circumstances. Thus, we reach the same result under the United States Constitution as we do under the New Hampshire Constitution.

*V. Statutory Construction*

Finally, we review the petitioner's contention that, as a matter of statutory construction, the legislature did not intend that amended RSA 651:58, I, apply to an offender, such as himself, who committed his crimes before the amendment's effective date. As a preliminary matter, we address the State's argument that the petitioner did not present a claim of statutory construction to the trial court or division after the filing of the State's petition for review, and, thus, did not preserve the issue for appellate review. The general rule is that a contemporaneous and specific objection is required to preserve an issue for appellate review. *State v. Blackmer*, 149 N.H. 47, 48 (2003). Preservation did not bar our recent consideration of the constitutionality of RSA 651:58, I, however, because the division lacked jurisdiction to consider the constitutional claims in the first instance, and our review furthered the interest of "judicial economy." *Guardarramos-Cepeda*, 154 N.H. at 9.

Assuming without deciding that the petitioner did not present his statutory construction claim below, we will, nonetheless, review this issue. Even if the petitioner had presented the issue below, the division may not have considered it. *Cf. Petition of the State of New Hampshire*, 150 N.H. at 298 ("[B]ecause the due process claim is a constitutional issue wholly apart from whether the sentence is appropriate and consistent, it is well beyond the division's statutory jurisdiction."). Furthermore, it is arguable whether the trial court would have considered the petitioner's argument prior to the division's enhancement of his sentence, in light of its refusal to address his constitutional claims for that same reason. Insofar as this issue turns upon the "substantive-or-procedural" dichotomy, similar to that present in our *ex post facto* analysis, judicial economy also supports its consideration.

■ Neither party argues that the legislature has expressly addressed the retroactivity of amended RSA 651:58, I. We have held that when the legislature is silent as to whether a statute should apply prospectively or retrospectively, our interpretation turns upon whether the statute affects the defendant's substantive or procedural rights. *State v. Hamel*, 138 N.H. 392, 394 (1994). In *Hamel*, we concluded that an amendment extending the statute of limitations in child sexual assault cases was a procedural change and could, thus, be applied retrospectively in the absence of an explicit legislative directive. *Id.* at 393, 395-96. We reasoned that the amendment did not "place[] a greater burden on a criminal defendant than merely extending the prosecutorial window" because it did not change the ultimate facts needed to prove guilt, punish a previously innocent act, alter the elements of the crime, or eliminate any defenses otherwise available. *Id.* at 395-96. *Compare id. with State v. Johnson*, 134 N.H. 570, 573-74 (1991) (holding that statute that changed aggravating factors that court could consider in imposing sentence affected defendants' substantive rights and could not apply retrospectively).

■ As addressed above, the amendment to RSA 651:58, I, created a procedural change in the statute by altering *who* made the final sentencing decision, but not the legal standards for that decision. As in *Hamel*, RSA 651:58, I, did not alter the definition of underlying offenses, increase the sentencing range for which a defendant was eligible as a result of a conviction, or eliminate any available defenses. Accordingly, we presume that the legislature intended RSA 651:58, I, as amended, to apply retrospectively.

*Petition denied.*

DUGGAN and GALWAY, JJ., concurred.