# United States Court of Appeals
## For the First Circuit

No. 10-2133

CHAD EVANS,

Petitioner, Appellant,

v.

RICHARD M. GERRY, WARDEN, NEW HAMPSHIRE STATE PRISON,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Lipez and Howard,

Circuit Judges.

David M. Rothstein, Deputy Chief Appellate Defender, New Hampshire Appellate Defender Program, for appellant.
Elizabeth C. Woodcock, Assistant Attorney General, Criminal Justice Bureau, with whom Michael A. Delaney, Attorney General, was on brief for appellee.

July 22, 2011

**BOUDIN**, **Circuit Judge**.  On December 21, 2001, a jury convicted Chad Evans of reckless second-degree murder, five counts of second-degree assault, endangering the welfare of a minor, and simple assault--the murder charge for the death of his girlfriend's 21-month-old daughter Kassidy on November 9, 2000.  See State v. Evans, 839 A.2d 8, 10-12 (N.H. 2003).  The evidence, recounted in the just cited decision affirming the conviction, describes the underlying facts, which have some bearing on Evans' ultimate state sentence--the subject of the present federal case.

The state's evidence showed that Chad Evans had regularly battered and eventually killed the young child.  The autopsy revealed that Kassidy had died from multiple blunt-force injuries that had caused bleeding in her brain and abdomen.  The medical examiner said that in the hours before her death Kassidy had received eight to ten blows to the head and at least two blows to the abdomen from something like a fist or foot.  Evans, 839 A.2d at 12.  Evans lied about the death to the police, id., and at trial sought unsuccessfully to cast the blame on a babysitter.  Id. at 15.

At sentencing, the trial court ordered a term of 28 years to life on the murder conviction, but imposed suspended sentences on the remaining charges.  See In re Evans, 908 A.2d 796, 799 (N.H. 2006).  New Hampshire, then as now, had a procedure by which a sentence could be modified by appeal to the Sentence Review

-2-

Division of the Superior Court, but at the time of Evans' crime, such appeals could be filed only by the defendant. Three and a half months before Evans was sentenced, New Hampshire changed the law to allow the state as well to apply for review of sentences. 2001 N.H. Laws 35; see also N.H. Rev. Stat. Ann. § 651:58 (2007). Whichever side sought review, the review panel could raise or lower the sentence or leave it alone. N.H. Rev. Stat. Ann. § 651:59 (2007).

The state filed a petition for sentence review, and after further proceedings not germane to the present case, In re State, 837 A.2d 291, 292 (N.H. 2003), the division imposed consecutive sentences of 5 to 10 years on one of the second degree assault charges and 10 to 30 years on a second such charge. In re Evans, 908 A.2d at 799. This increased Evans' minimum term from 28 to 43 years. All of the charges on which the trial court had initially suspended sentence entirely related to earlier abuse of Kassidy (or her mother) in the months prior to her death.

On Evans' new appeal, the New Hampshire Supreme Court affirmed the sentence increase, In re Evans, 908 A.2d at 798, rejecting inter alia Evans' claim of a violation of the Ex Post Facto clause of the U.S. Constitution. U.S. Const. art. I, § 10, cl. 1. Evans petitioned the federal district court for habeas relief, 28 U.S.C. § 2254 (2006), raising solely the Ex Post Facto

claim.[1]  The district court dismissed the claim on summary judgment but granted a certificate of appealability on one question:

> Whether the application of RSA § 651:58, I to Evans was contrary to clearly established federal constitutional law as set forth in Garner v. Jones, 529 U.S. 244 (2000), because Garner is not limited to retroactive changes in rules governing parole.

The district court denied a certificate of appealability to Evans' second question: whether the decision "was an unreasonable application of federal law, as set forth in Garner; Dobbert v. Florida, 432 U.S. 282 (1977), and United States v. Mallon, 345 F.3d 943 (7th Cir. 2003)." Ordinarily the distinction between the "contrary to" question and the "unreasonable application" question is easily made, but in this case Evans' argument falls pretty close to the dividing line and, in fairness to Evans, we treat both issues together.

A decision is "contrary to" governing Supreme Court authority "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court]" but reaches a different result.

---

[1]Under the habeas statute, relief is available inter alia where a state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ."  28 U.S.C. § 2254(d)(1).

-4-

Id. at 406.  Evans has conceded that no Supreme Court case has materially indistinguishable facts.  The "unreasonable application" test applies where the facts are different but the state court manifestly and unreasonably misapplies the relevant Supreme Court case law.  Id. at 412.

The classic Supreme Court formulation in Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798), described the four categories to which the Ex Post Facto clause is directed:

> 1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d.  Every law that aggravates a crime, or makes it greater than it was, when committed.  3d.  Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Id. at 390 (emphasis omitted).  Literally, this formulation would not apply to Evans.  Although Evans argues that the statutory change in question subjects a defendant to "greater punishment," the statutory punishment laid down by "the law annexed to the crime" he committed has not been altered.

However, the Supreme Court has extended the Ex Post Facto clause beyond the core protections in Calder v. Bull although with caution.  Under the third category, relating to increased punishment, the Supreme Court focused primarily on substance

changes that may not strictly increase the stated maximum or minimum sentence for a crime but come pretty close: the Court applied the clause to increases in state sentencing guidelines that prescribe higher penalties, Miller v. Florida, 482 U.S. 423 (1987), and to a statutory reduction in good-time credits that would otherwise reduce the length of a sentence. Weaver v. Graham, 450 U.S. 24 (1981).

The statutory change here is a change not in the length of sentences or guidelines but in procedures related to sentencing, specifically, the alteration in the structure for review of sentences. Still, the Supreme Court has said that, in some circumstances and on some conditions, the Ex Post Facto clause could apply to statutes adopting procedural changes. See Carmell v. Texas, 529 U.S. 513, 539 (2000). Both of the leading cases involved changes that altered or permitted alteration of the dates for parole hearings. Morales v. Cal. Dep't of Corr., 514 U.S. 499 (1995); Garner v. Jones, 529 U.S. 244 (2000).

In neither case did the Court find such a violation, rejecting the Ex Post Facto claim in Morales and vacating the lower court's finding of such a violation in Garner and remanding for further analysis. In each case the Court said that the question was whether the procedural change imposed a "sufficient risk of increasing the measure of punishment attached to the covered crimes," Morales, 514 U.S. at 509, or a "significant risk of

prolonging respondent's incarceration," Garner, 529 U.S. at 251. This is the language on which Evans bases his appeal, but just how the test is to be applied requires some attention to the facts of the two Supreme Court cases.

In Morales, at the time of the crime a prisoner was entitled to be considered for parole after a fixed period; and if parole was denied, the board had to revisit the matter each year. 514 U.S. at 502-03. After Morales' crime, a statutory change allowed the board after an initial denial to defer further suitability hearings for up to three years in certain cases and Morales' was among them. Id. at 503-04. The Ninth Circuit found an Ex Post Facto violation and the Supreme Court reversed, finding that the adverse effect of the change was speculative. Id. at 508-09.

Then, in Garner, the Supreme Court remanded another such case involving a regulatory change in the frequency of parole reconsideration of life-sentenced defendants from three years to eight. 529 U.S. at 247. The Eleventh Circuit had held this an Ex Post Facto violation, distinguishing Morales as involving a more speculative impact, but the Supreme Court found the showing insufficient and remanded to consider its actual impact under the "significant risk" test. Id. at 255.

On Evans' appeal from his increased sentence, the New Hampshire Supreme Court noted Morales' "sufficient risk" test. In

re Evans, 908 A.2d at 802.  The state court pointed out that unlike deferral of parole hearings which lengthens incarceration, the New Hampshire statute merely alters who gets finally to decide what initial sentence is reasonable, id. at 804, and it cited federal case law upholding post-crime changes in the federal review structure for initial sentences.[2]  Such a procedural change, it concluded, did not violate the Constitution.  Id.

Thus, the state court apparently thought that it was respecting the Morales test while also finding that the test did not require a result in Evans' favor.  Right or wrong, this is hardly a case where "the state court applie[d] a rule" different than "the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405 (O'Connor, J.).  That rubric requires a failure to recognize the Supreme Court's test or, one where (even if lip service is paid to the test), "the state court confronts a set of facts that are materially indistinguishable from a decision of this Court" but reaches a different result.  Id. at 406.[3]

---

[2]The federal circuit court opinions rejected Ex Post Facto claims when Congress amended 18 U.S.C. § 3742(e) to allow de novo review of the district court's application of sentencing guidelines, see, e.g., United States v. Andrews, 447 F.3d 806, 809-10 (10th Cir. 2006); United States v. Riley, 376 F.3d 1160, 1165 (D.C. Cir 2004); United States v. Mallon, 345 F.3d 943, 946-47 (7th Cir. 2003).

[3]Justice O'Connor emphasized at length that the "direct conflict" prong depends on whether the state court properly expressed the Supreme Court's rule and not on whether a federal habeas court would have reached the same outcome under that rule. 529 U.S. at 406.  The importance of the gloss is underscored by the

Whether the state court "unreasonably applied" the Morales/Garner significant risk test might well appear to be a more relevant and perhaps closer question in this case. In principle a state court might echo the Supreme Court's language as to the rule of law but, in fitting the rubric to different facts, reach a result that was objectively unreasonable. Cf. Woodford v. Visciotti, 537 U.S. 19, 24-27 (2002) (per curiam). While the "unreasonably applied" test provides latitude, it cannot be unlimited.

This takes us to the reasoning of the New Hampshire Supreme Court. The federal circuit precedents it cited were admittedly post-Morales decisions (see note 2, above) but they concerned a shift in the final decision-making for both sides. Here, the New Hampshire statute gave the prosecution a second chance to seek the sentence it wanted. While this equalized the position of both sides, most defendants would doubtless prefer that they alone had the right to appeal from an initial sentence--so the statute does, in some sense, "disadvantage" defendants. Weaver, 450 U.S. at 29.

But many acts of the legislature occurring after a crime was committed could increase both the chance of a conviction and the risk of more punishment. Merely to boost the budget of the

---

fact that, on the scope of the habeas statute, the separate opinion of Justice O'Connor commanded five votes, supplanting on this issue Justice Stevens' opinion delivering the judgment. Id. at 402-13.

prosecutor's office and supporting forensic resources means that there is some chance that more defendants will be tried and on more serious charges and will in some cases likely receive longer sentences. "Disadvantage" is a minimum condition but, based on the authorities Evans himself invokes, there must at least be a substantial or significant risk.

Whether the New Hampshire change in this case constituted a "substantial risk" of a higher sentence turns very much on the time as of which that question is asked. Any procedural change in a law affecting criminal trials or sentences can after the fact prove to have had an adverse effect on the defendant in a particular case--as the New Hampshire law here clearly did on Evans. Morales himself had his opportunity to get parole deferred, Morales, 514 U.S. at 503, but the Supreme Court emphasized that (judged in advance) Morales and others like him faced a relatively low risk of a substantial increase in their incarceration. Id. at 510-12.

Absent this kind of ex ante analysis, any legislative change in procedural or evidentiary law that turned out incidentally to work against a defendant would be condemned. Every trial would have to use a set of procedural and evidence rules not determined by the date of the trial, as is ordinarily done, but by the date of the crime committed by the particular defendant--who might, of course, be on trial for multiple crimes committed at

-10-

different times. The "significant risk" test works to avoid this outcome by filtering out changes--like the parole deferral change in Morales--that do not pose the kind or degree of risk against which the Ex Post Facto clause was meant to guard.

The usual perspective from which Ex Post Facto analysis views statutory changes is that of the time of the criminal act, Weaver, 450 U.S. at 28, 30, and the usual question is what an actor's reasonable expectations would be. The latter may be a fanciful question since most defendants do not plan their crimes with close attention to the criminal code and its penalties, United States v. Demaree, 459 F.3d 791, 793 (7th Cir. 2006); but the insistence on the protection has deeper roots in our conception of "fair warning." Weaver, 450 U.S. at 28-30; Miller v. Florida, 482 U.S. at 430. And yet not every change in procedure or evidence occurring after the crime offends the sense of fairness.

From the ex ante standpoint, the New Hampshire statutory change could affect any defendant but in general would hardly pose a significant risk. Trial judges usually enjoy great latitude in exercising their discretion, see N.H. Rev. Stat. Ann. §§ 651:1-70, and--where the sentence is within the trial court's discretion--reversals are ordinarily rare unless the trial judge has imposed a patently unreasonable sentence. See State v. Kelly, 986 A.2d 575, 576 (N.H. 2009) ("We review a trial court's imposition of a deferred sentence for an unsustainable exercise of discretion.").

Evans, who bears the burden of proof in establishing a violation of the Ex Post Facto clause, apparently presented no evidence below or in state court to suggest that the Sentence Review Division commonly raises or lowers sentences. The New Hampshire Sentence Review Division of the Superior Court is comprised of three trial judges, N.H. Rev. Stat. Ann. § 651:57 (2007), and it is a fair supposition that the review procedure was primarily designed to provide a consistent check on patent outlier sentences by subjecting them to the scrutiny of other trial judges who regularly deal with such cases.

In all events, Evans' own situation hardly suggests that the sentences are routinely adjusted. Evans was initially given only suspended sentences for all of his brutal acts toward a helpless infant of which at least a number were committed on earlier occasions prior to the murder, and the Sentence Review Division simply unsuspended some of these suspended sentences. Viewing the matter prior to the commission of the offense, the expectation of one about to commit a crime would be a reasonable sentence--just what the New Hampshire amendment aims to achieve.

The state court in this case could have decided this case differently by saying (for example) that the statutory change does potentially "disadvantage" defendants and entails some "risk" of an increase in sentence. But circuit courts that reasoned in this mechanical fashion in Morales and Garner were reversed; and it is

-12-

clear enough from the outcome in both cases--especially <u>Morales</u> where the parole date was deferred--that more subtle weighing of risk is required.

Anyway, to ask whether the state court, or we ourselves on de novo review, <u>could</u> reach a different result is to ask the wrong question. The current habeas statute was intended by Congress to narrow the occasions for collateral attacks, <u>see</u> <u>Williams</u>, 529 U.S. at 404, and that decision makes clear that the question for us is not whether we would necessarily have reached the same result but whether the state court misstated the law or reached an unreasonable result in its application. As we said in <u>Brown</u> v. <u>Ruane</u>, 630 F.3d 62, 69 (1st Cir. 2011), quoting in part <u>Wright</u> v. <u>Van Patten</u>, 552 U.S. 120, 128 (2008):

> If Supreme Court cases 'give no clear answer
> to the question presented,' a state court's
> resolution of a constitutional question may
> not serve as a basis for habeas relief.

Here, no one can be sure what the Supreme Court would do in a case involving Ex Post Facto doctrine in this new and different context. Modern Ex Post Facto doctrine, extending protection beyond enlargement of crimes or of statutory ranges for punishment, is more the product of judicial precedent than of express constitutional language or history. But in Evans' case, the habeas standards for overturning the state court have not been met.

<u>Affirmed</u>.

-13-