*298 OPINION OF THE COURT
Joseph Gerace, J.
This is a CPLR article 78 proceeding in which petitioner, Irene Spetz, challenges the denial of Medicaid benefits by the respondents, New York State Department of Health (the State) and Chautauqua County Department of Social Services (the County). The denial was based upon the creation of a purportedly irrevocable trust by petitioner’s husband, Richard Spetz. The County determined that the assets of this trust were assets available to the petitioner and that her resources, therefore, exceeded the level necessary to qualify for Medicaid. This determination was upheld by the State after a fair hearing. Petitioner contends that this decision was arbitrary and capricious, as well as being aifected by an error of law.
In determining an applicant’s eligibility for Medicaid benefits, the social services department “ ‘must consider only available income and resources’ (18 NYCRR 360-2.3 [c] [1]). The term ‘available resources’ includes ‘all resources in the control of the applicant/recipient. It also includes any resources in the control of anyone acting on the applicant’s/recipient’s behalf such as a guardian, conservator, representative or committee’ (18 NYCRR 360-4.4 [b] [1]).” (Matter of Little, 256 AD2d 1152, 1153 [4th Dept 1998].) The consideration must also include the resources of all legally responsible relatives, such as, in this case, a spouse. (18 NYCRR 360-2.3 [c] [1].)
Although the terms of the trust make it irrevocable, Mr. Spetz did reserve to himself the right to change the beneficiary. This right was limited, in that he was specifically prohibited from naming himself, his spouse, creditors of himself or his spouse, the estates of himself or his spouse or creditors of those estates. Respondents argue that because of this right, the trust assets are in the control of Mr. Spetz and, therefore, must be considered in determining the eligibility of Irene Spetz to receive Medicaid benefits.
Further, respondents argue that, under section 7-1.9 of the Estates, Powers and Trusts Law, any trust can be revoked, provided that the beneficiaries consent, in writing, to the revocation. Thus, they argue, the assets of the trust should be considered available to the petitioner because her husband could seek the consent of the trust’s beneficiaries to revoke the trust, thus placing the corpus of the trust back in his hands. This is especially true, they argue, since Mr. Spetz could use his power to change beneficiaries in collusion with someone willing to revoke the trust.
*299 Addressing the second argument first, the court finds that the speculative possibility of a revocation pursuant to EPTL 7-1.9 does not render the corpus of the trust “potentially available” to the petitioner. There is no evidence presented that the beneficiaries here would consent to such a revocation. Without such evidence, the respondents cannot treat the trust as revocable.
In Matter of Hoelzer v Blum (93 AD2d 605 [2d Dept 1983]), the Court considered the effect of another section of the EPTL, section 7-1.6 (a). That section provides that the court may make an allowance from the principal of a trust to provide support for an income beneficiary whose support is not otherwise provided for, on the condition that the beneficiaries of the trust provide written consent. This is very similar to section 7-1.9, since it also provides a means for the trust corpus to be reached in contradiction of the express terms of the trust.
In Hoelzer, Social Services denied the application for Medicaid benefits, stating that the applicant was not a person requiring medical assistance because she had not made a bona fide effort to invade the corpus of the trust. This, again, is similar to the position taken by respondents in the present case. The Second Department, however, ruled in favor of the applicant, holding that the trust assets were not a potentially available resource because it was clear that the consent of the beneficiaries would not be given. Absent that consent, the petitioner in Hoelzer, like Mr. Spetz, had no means to reach the assets of the trust.
The ruling of Hoelzer, therefore, makes it clear that social services may not treat trust assets as being potentially available to an applicant or spouse where they cannot be reached without consent of the trust beneficiaries. To hold otherwise would eviscerate the federal and state statutes providing, in detail, for the protection of assets through the use of irrevocable trusts, since every trust would be presumed to be revocable under section 7-1.9.
The provisions of the State Medicaid Manual of the Health Care Financing Administration of the United States Department of Health and Human Services, cited by respondent, County, supports this decision. The manual states, at section 3259.1 (A) (5), that “a trust which is called irrevocable but which terminates if some action is taken by the grantor is a revocable trust for purposes of this instruction.” (Emphasis added.) Subdivision (A) (6) continues, “[a]n irrevocable trust is a trust which cannot, in any way, be revoked by the grantor.” *300 (Emphasis added.) The grantor in this case, Mr. Spetz, cannot revoke the trust. It is the beneficiaries who have the power, under EPTL 7-1.9, to allow or prohibit the revocation, not the grantor.
The claim that Mr. Spetz could somehow use his power to change the beneficiary in collusion with someone willing to revoke the trust is entirely speculative. The Fourth Department, in Little (supra), refused to base a Medicaid decision upon the possibility of collusion, without evidence of bad faith or fraud. There is no such evidence here.
Respondents also argue that the trust assets are available to the applicant because Mr. Spetz can direct the trustees to use income or principal from the trust in a manner that benefits him, using the threat of appointing different beneficiaries if they refuse to comply. They assert that the retention of the right to change beneficiaries is equivalent to control over the corpus of the trust.
The cases cited for this proposition involve starkly different issues and are not applicable to the present proceeding. In Case v Fargnoli (182 Misc 2d 996, 998 [Sup Ct, Tompkins County 1999]), the court stated that “As a practical matter, a power to change the remainder interests in a self-settled trust is very nearly a power to dispose of the principal.” This was essentially dicta, however, as the court went on to rule that the assets of an irrevocable trust were available to the grantor for Medicaid purposes, because the trustees were empowered by the terms of the trust to distribute to him income and principal sufficient to support his standard of living. The power of appointment did not enter into the rationale for the court’s decision. And, of course, the trust at issue in that case was very different from the trust at issue here.
The statement quoted above, from Case, cited a Court of Appeals decision, Matter of Reynolds (87 NY2d 633 [1996]), involving the question of whether or not a bereaved husband should be entitled to take a portion of trust assets as his elective share of his spouse’s estate. His wife had created a trust, but retained the right to change the beneficiaries. The issue before the Court, however, was whether or not this trust constituted a “testamentary substitute”; in other words, had the trust been used as the equivalent of a will, for the purpose of bypassing the husband’s rights? The decision was based closely upon a statute, EPTL 5-1.1, which defined “testamentary substitute.” The Court, indeed, stated that (at 638) “[t]he power here to designate many beneficiaries or classes is essentially indistin *301 guishable from the power to dispose of the principal of the trust as contemplated by the statute.” (Emphasis added.)
Certainly, when determining whether or not a trust serves the same purpose as a will, the power to name beneficiaries is determinative. It is not determinative, however, as to whether or not trust assets should be considered available or potentially available to the grantor for Medicaid eligibility purposes. Thus, Reynolds does not give guidance on the question presently before this court and, to the limited extent that Case might be read as doing so, this court declines to follow it.
As for the argument that Mr. Spetz could use his power to coerce the beneficiaries into using trust assets in a way that would benefit him personally, it is necessary to review New York State’s Medicaid regulations. Availability of assets held in trust is governed by 18 NYCRR 360-4.5 (b), relevant portions of which read as follows:
“(1) Irrevocable trusts created by an applicant/ recipient. The availability of assets held in an irrevocable trust to an applicant/recipient depends on the trustee’s authority, under the specific terms of the trust agreement, to make payments to or for the benefit of the applicant/recipient.
“(i) Any portion of the trust principal, and of the income generated by the trust principal, from which no payments may be made to the applicant/ recipient under any circumstances, must be considered to be assets transferred by the applicant/ recipient for purposes of section 360-4.4(c) of this Subpart * * *
“(ii) Any portion of the trust principal, and of the income generated from the trust, which can be paid to or for the benefit of the applicant/recipient, under any circumstances, must be considered to be an available resource.”
The trust at issue provides very specifically the manner in which the trustees are to utilize the income and principal of the trust. The only allowed distribution is to the beneficiaries. The trustees have no power to pay principal or income “to or for the benefit of’ Mr. Spetz.
It is conceivable, as argued by respondents, that Mr. Spetz could bring pressure on the beneficiaries to make payments to or for Mr. Spetz’ benefit. But section 360-4.5 (b) (1) states that the availability of assets, for Medicaid eligibility purposes, depends upon the “trustee’s authority, under the specific terms *302 of the trust agreement.” The trustees here have no such authority. Although the trustees and beneficiaries are currently the same people, that is not necessarily so under the terms of the trust, as respondents have pointed out, and, in any event, their roles as trustees and beneficiaries must be considered as legally separate.
Respondents focus on the language of section 360-4.4, which governs, generally, the availability of resources, and states at subdivision (b) (1) that available resources include “all resources in the control of the applicant/recipient.” Section 360-4.5, however, gives specific directions as to how this general instruction must be construed in the case of assets held in trust. “Control,” therefore, must be construed in light of the trustees’ authority under the specific terms of the trust.
For the reasons outlined above, the court finds that the fair hearing decision was arbitrary and capricious and aifected by errors of law. Accordingly, the petition is granted.
It is, therefore, ordered that the petitioner be granted judgment against respondents; and it is further ordered that the decision of the respondents to deny medical assistance benefits to petitioner is reversed; and it is further ordered that the respondents are directed to grant petitioner medical assistance benefits, in full, retroactive to January 1, 2000.