NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Health and Human Services
No. 2015-0395


PETITION OF ESTATE OF THEA BRAITERMAN
(New Hampshire Department of Health and Human Services)


Argued:  May 11, 2016
Opinion Issued:  July 12, 2016


Braiterman Law Offices, of Concord (David J. Braiterman on the brief and orally), for the petitioner.


Joseph A. Foster, attorney general (Megan A. Yaple, attorney, on the brief and orally), for the New Hampshire Department of Health and Human Services.


DALIANIS, C.J.  The petitioner, the Estate of Thea Braiterman, filed a petition for writ of certiorari challenging a final decision of the Administrative Appeals Unit (AAU) of the New Hampshire Department of Health and Human Services (DHHS), that upheld the determination that the applicant, Thea Braiterman, was ineligible for Medicaid-Old Age Assistance (Medicaid-OAA) benefits because her assets exceeded the eligibility threshold.  See Sup. Ct. R. 11; see also 42 U.S.C. § 1396p(h)(1) (2012) (explaining that, for the purpose of determining Medicaid eligibility, the term "'assets'" includes "all income and resources of the individual and of the individual's spouse").  On appeal, the petitioner contends that the AAU erroneously found that the Thea G. Braiterman Irrevocable Trust (the Trust) was includable as an asset for the purpose of determining the applicant's eligibility for Medicaid-OAA benefits.

The petitioner has argued, and DHHS has not disputed, that the petitioner's challenge is not moot even though the applicant is now deceased. Assuming without deciding that the petition is not moot, we deny the petition for a writ of certiorari.

I. Facts

A. Procedural Background

The applicant created the Trust in 1994, naming herself and her son, David J. Braiterman, as trustees. The applicant resigned as a trustee in 2008. However, the Trust authorized the applicant to appoint additional and successor trustees, and the petitioner acknowledges that the applicant could have resumed service as a trustee by appointing herself as an additional or successor trustee.

The Trust named the applicant's children — David, Ken Braiterman, and Marta Tanenbaum — as the "Legatees." Ken has since died, leaving no issue. Thus, David and Marta are the remaining Legatees.

When the Trust was created, the applicant granted it all of her real property interests, her personal property interests, and $1.00. The real property included the furnished home in which the applicant and her husband lived. The applicant and her husband lived in the home rent-free until he died in 2004. At some point after her husband died, the applicant moved into an assisted living facility. Thereafter, the furnished home was sold, and, in 2009, the sale proceeds were transferred to an investment account.

In 2009, the investment account contained approximately $189,000. By November 2013, the account contained between $130,000 and $135,000. Between 2009 (when the applicant entered assisted living) and 2012, regular disbursements from the Trust were made to undisclosed recipients for undisclosed reasons. According to the AAU, the petitioner "equivocated" as to whether either David or Marta used any of the disbursements from the Trust to fund the applicant's expenses. DHHS has not inquired as to whether the disbursements were used to benefit the applicant.

The applicant resided in a nursing home from January 2014 until her death in March 2016. In February 2014, she applied for Medicaid-OAA. In March 2014, DHHS denied her application on the ground that her assets, which included the Trust (then valued at $156,000), were "more than the limit set for" Medicaid-OAA. The applicant appealed DHHS's decision to the AAU. Following a hearing, the AAU upheld the determination that the Trust was includable as an asset for the purpose of assessing whether the applicant was eligible for Medicaid-OAA benefits. The applicant unsuccessfully moved for rehearing, and this petition followed.

2

<u>B. The Trust</u>

The Trust Agreement contains 11 clauses, not all of which are relevant to this appeal. The Trust Agreement refers to both the applicant and her son, David, as "Trustee." The applicant is also referred to as "Donor," and David is listed as one of the "Legatees."

Clause 3 concerns the applicant's reserved powers and rights as the donor of the Trust. Under Clause 3.1, the applicant reserved the right "to alter the order and number of the successor Trustees . . . or to name additional Trustees or successor Trustees." In Clause 3.2, the applicant reserved "the power, exercisable at any time . . . , to appoint any part or all of the undistributed income of the Trust Fund to any one or more of the Legatees," including "the power to make lifetime gifts." In Clause 3.3, the applicant reserved "the power, exercisable at any time . . . , to appoint any part or all of the principal of the Trust Fund, outright or upon trusts, conditions or limitations, to any one or more of the Legatees," including "the power to make lifetime gifts." Under Clause 3.7, the applicant reserved "the power to require the Trustee to accumulate any or all of the income of the Trust Fund."

Clause 3.6 provides that the applicant did "not retain any interest in the principal or income" of the Trust "by express reservation or by agreement between or among, or assumption of," the applicant, the trustee, and the Legatees. Clause 3.8 provides that the applicant did "not reserve any power or authority whatever to revoke or amend any provision" of the Trust Agreement.

Clause 4 concerns dispositions from the Trust during the applicant's lifetime. Pursuant to Clause 4.1, during the applicant's lifetime, the Trustee could "distribute, from time to time, to and among any one or more of the Legatees as may be living, so much of the principal or income of the Trust Fund at such time or times and in such amounts and proportions" as the trustee, in his or her "uncontrolled discretion, [deemed] advisable." Clause 4.1.1 provides:

> If, at any time during the lifetime of the [applicant], the [applicant] may lose or may lose eligibility for substantial cash benefits or medical or other services by reason of the existence, size or terms of this Trust, the [applicant] suggests that the Trustee consider taking action to terminate the Trust by distributing the principal and accumulated income of the Trust Fund, if in the judgment of the Trustee such loss of eligibility would likely necessitate expenditures from the Trust for or on behalf of the [applicant] at a rate expected to deplete the Trust substantially and to defeat its supplemental and long-term purposes. The [applicant] expresses the hope that if the Trust is terminated during the lifetime of the [applicant], any persons

3

taking under this paragraph will use a portion of her gift to supplement the income and the governmental benefits and services to which the [applicant] may be entitled by reason of age, disability or otherwise. It is not the intention of the [applicant], however, to impose any legal obligation or trust.

Clause 7.13 provides:

Notwithstanding any other provisions of this instrument except as specifically set forth herein, the discretionary power of the Trustee . . . to distribute principal or income or to determine the size of any such distribution shall not be exercised or exercisable by any Trustee in a manner that will benefit the Trustee personally or anyone whom the Trustee has a legal obligation to support . . . .

II. Analysis

A. Standards of Review

"Certiorari review is an extraordinary remedy, granted not as a matter of right, but rather at the court's discretion when the substantial ends of justice require it." Petition of Maxi Drug, 154 N.H. 651, 655 (2006). "Certiorari review is limited to whether the agency acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously." Id. at 655-56. We exercise our power to grant such writs sparingly. Petition of Chase Home for Children, 155 N.H. 528, 532 (2005). In this case, the extraordinary remedy of certiorari is unwarranted.

Resolving the issues in this appeal requires that we interpret federal Medicaid statutory and regulatory provisions. The interpretation of a statute or a regulation is a question of law, which we review de novo. See Dube v. N.H. Dep't of Health & Human Servs., 166 N.H. 358, 364 (2014). We interpret federal statutes and regulations "in accordance with federal policy and precedent." Id. When interpreting statutes and regulations, we begin with the statutory or regulatory language, and, if possible, construe that language according to its plain and ordinary meaning. See id.

B. Medicaid Eligibility in General

We begin with a general overview of Medicaid eligibility as it pertains to an applicant's assets. "Medicaid is a joint state and federal program under which the federal government provides financial support to states that establish and administer a state Medicaid program, in accordance with federal

4

law, through an approved state plan." Petition of Maxi Drug, 154 N.H. at 656; see 42 U.S.C. §§ 1396 et seq. (2012 & Supp. II 2014). Medicaid "provides joint federal and state funding for medical care for individuals who cannot afford to pay their own medical costs." Arkansas Dept. of Health and Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006); see Ramey v. Reinertson, 268 F.3d 955, 958 (10th Cir. 2001) (explaining that, "[i]n structuring the Medicaid program, Congress chose to direct [the] limited funds to persons who were most impoverished" (quotation omitted)).

Because Medicaid is a "program for low-income individuals," it requires "applicants to meet certain financial eligibility criteria." Appeal of Lowy, 156 N.H. 57, 60 (2007). "Generally, Medicaid provides assistance for two types of individuals: the categorically needy and the medically needy." Lewis v. Alexander, 685 F.3d 325, 332 (3d Cir. 2012). The categorically needy are those who qualify for public assistance under certain federal programs. See id.; see also Appeal of Huff, 154 N.H. 414, 416-17 (2006). "The medically needy are those who would qualify as categorically needy (because they are disabled, etc.) but whose . . . assets are substantial enough to disqualify them." Lewis, 685 F.3d at 332; see Appeal of Huff, 154 N.H. at 417.

"Every State participating in Medicaid must provide assistance to the categorically needy." Lewis, 685 F.3d at 332. Generally, "States need not provide assistance to the medically needy." Id. But see Appeal of Huff, 154 N.H. at 417 (explaining the circumstances under which a State is required to provide benefits to the medically needy). If States make medical assistance available to the medically needy, they are subject to various federal statutory and regulatory restrictions "in determining to whom medical assistance should be extended." Lewis, 685 F.3d at 332; see also Thorson v. Nebraska DHHS, 740 N.W.2d 27, 30 (Neb. 2007). New Hampshire makes medical assistance available to the medically needy. See RSA 167:6, VII (2014).

Under federal law, only the assets that are "available to the applicant" are considered to determine her eligibility for Medicaid benefits. 42 U.S.C. § 1396a(a)(17) (Supp. II 2014) (emphasis added); see Thorson, 740 N.W.2d at 30-31. "If the applicant's 'available' assets exceed a statutory ceiling, then coverage is denied." Ramey, 268 F.3d at 958.

1. Prior Law

Before 1986, courts "had ruled in various contexts that, if an individual settled assets in an irrevocable trust and the disposition of those assets was at the discretion of a trustee, no beneficiary of the trust would have a right to call for them, and so the assets could not be considered available to the beneficiary" for the purpose of determining the beneficiary's eligibility for Medicaid. Cohen v. Com'r of Div. of Med. Asst., 668 N.E.2d 769, 771 (Mass. 1996) (citing cases). Only assets that were actually available to the beneficiary

because they had been distributed were counted toward Medicaid eligibility. See id. at 771 n.7; see also Forsyth v. Rowe, 629 A.2d 379, 383 (Conn. 1993).

Accordingly, a "loophole" existed under the pre-1986 law, pursuant to which "individuals anticipating the need for expensive long-term medical care could impoverish themselves and qualify for [M]edicaid assistance while preserving their resources for their heirs." Forsyth, 629 A.2d at 385. To do so, "[a]n individual could place assets in an irrevocable discretionary trust that paid him the income for life until long-term medical care became necessary." Id. "At that point the trustee could exercise his discretion to withhold payments to the beneficiary, thus, allowing the beneficiary to qualify for [M]edicaid assistance while preserving assets for his heirs." Id. By "put[ting] large sums of money" in an irrevocable trust, individuals were able to "reduc[e] (on paper) the amount of assets [they] owned." Lewis, 685 F.3d at 332. In the words of the Massachusetts Supreme Judicial Court, "[t]he grantor was able to have his cake and eat it too." Cohen, 668 N.E.2d at 772.

"Congress understandably viewed this as an abuse and began addressing the problem with statutory standards." Lewis, 685 F.3d at 332. Thus, in 1986, "in response to the prevalent use of irrevocable trusts by affluent persons to qualify for Medicaid benefits," Congress enacted 42 U.S.C. § 1396a(k) (1988) (repealed 1993). Ramey, 268 F.3d at 961; see Cohen, 668 N.E.2d at 771-72. The purpose of Section 1396a(k) was to "close the 'loophole' in the Medicaid act so that assets in certain trusts would be counted in determining whether a Medicaid applicant satisfied the maximum asset requirement." Boruch v. Nebraska Dept. of Health, 659 N.W.2d 848, 852 (Neb. Ct. App. 2003).

The trusts deemed countable for the purpose of determining an applicant's eligibility for Medicaid were called Medicaid qualifying trusts (MQTs). See id. at 853; see also 42 U.S.C. § 1396a(k). Section 1396a(k) defined a MQT as an inter vivos trust or similar legal device "under which the individual [applying for Medicaid benefits] may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." 42 U.S.C. § 1396a(k)(2). The 1986 law deemed "available" to the applicant (the beneficiary) "the maximum amount that could, at the trustee's discretion, be distributed to the beneficiary" from an irrevocable trust regardless of whether the funds were actually distributed. Forsythe, 629 A.2d at 385; see 42 U.S.C. § 1396a(k)(1).

The House Committee on Energy and Commerce recommended passage of § 1396a(k), along with other provisions, with the following statement:

The Committee feels compelled to state the obvious.
Medicaid is, and always has been, a program to provide basic

6

health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use Medicaid qualifying trusts and similar "techniques" to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.

H.R. Rep. No. 99-265, pt. 1, at 72 (1985). "With the passage of § 1396a(k), MQTs were no longer a permissible means to shelter assets for purposes of Medicaid eligibility." Ramey, 268 F.3d at 959.

### 2. Current Law

In 1993, in reaction "to the sophisticated instruments used to circumvent the MQT rules," Congress repealed § 1396a(k) and enacted § 1396p(d) (1993), which was aimed at "more effectively curtail[ing] the use of trusts or similar mechanisms to qualify for Medicaid." Regan, Comment, Medicaid Estate Planning: Congress' Ersatz Solution for Long-Term Health Care, 44 Cath. U.L. Rev. 1217, 1233, 1239 (1995); see Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, Title XIII § 13611(b), (d)(1)(C), 107 Stat. 312, 624-26, 627 (1993) (OBRA); see also Boruch, 659 N.W.2d at 853. "In the 1993 OBRA amendments, Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility." Lewis, 685 F.3d at 333. Although "Congress also excepted from that rule three types of trusts meeting certain specific requirements," id., none of those trusts is here at issue, see 42 U.S.C. § 1396p(d)(4).

Section 1396p(d) is "even less forgiving" of inter vivos trusts designed to shelter assets than § 1396a(k) had been. Ramey, 268 F.3d at 959. For example, the restrictions upon the use of trusts to qualify for Medicaid "now apply without regard to the purposes for which the trust was established, whether the trustees have or exercise any discretion under the trust, or whether there are any restrictions on the making, timing, or use of distributions from the trust." Miller v. SRS, 64 P.3d 395, 401 (Kan. 2003); see 42 U.S.C. § 1396p(d)(2)(C).

Because the Trust at issue was established after the effective date of § 1396p(d), it is governed by that provision. See Cohen, 668 N.E.2d at 773. Section 1396p(d)(3)(B), which pertains to irrevocable trusts, such as the Trust, provides:

> (i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual [applying for Medicaid benefits], the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual,

and payments from that portion of the corpus or income—
    (I) to or for the benefit of the individual, shall be considered income of the individual, and
    (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and

(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

42 U.S.C. § 1396p(d)(3)(B) (emphasis added).  Thus, under the current law, "if there are any circumstances under which payment from the trust could be made to or for the benefit of the" applicant, then the irrevocable trust is deemed countable for the purpose of determining her eligibility for Medicaid. Id. (emphases added).

### 3.  Applying the Current Law to the Trust

In determining whether the AAU erred when it upheld the determination that the Trust was includable as an asset pursuant to the current Medicaid law, see 42 U.S.C. § 1396p(d)(3)(B), we find informative The State Medicaid Manual (Manual).  See Ctrs. for Medicare and Medicaid Servs., The State Medicaid Manual, Pub. No. 45, available at https://www.cms.gov/Regulations-and-Guidance/guidance/Manuals/Paper-Based-Manuals-Items/CMS021927.html.  The Manual was developed by the federal Centers for Medicare and Medicaid Services to "assist[ ] states in interpreting the complex labyrinth of statutory and regulatory requirements that govern receipt of Medicare and Medicaid benefits." Zahner v. Secretary PA. Dept. of Human Services, 802 F.3d 497, 501 (3d Cir. 2015); see Ahlborn, 547 U.S. at 275 (explaining that Medicaid administration "is entrusted to the Secretary of Health and Human Services . . . , who in turn exercises his authority through the Centers for Medicare and Medicaid Services").  It "serves as the official U.S. Health and Human Services Department . . . interpretation of the Medicaid law and regulations." Zahner, 802 F.3d at 501 (quotation and brackets omitted). Its instructions "are binding on Medicaid State agencies." Manual, supra ch. 1, Foreword (Rev. 1).  Federal courts have held that the Manual, although not controlling, "is entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary [of the federal agency] under the [Medicaid] Act." S.D. ex rel. Dickson v. Hood, 391 F.3d 581,

590 n.6 (5th Cir. 2004); see Sai Kwan Wong v. Doar, 571 F.3d 247, 262 (2d Cir. 2009) (giving "substantial weight" to the statutory interpretation contained in § 3259.7 of the Manual (quotation omitted)); see also Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (setting forth rule regarding deference).

Contrary to the petitioner's assertions, it is immaterial that the sections of the Manual pertinent to this case became effective in December 1994, months after the Trust was created. See Manual, supra ch. 3, § 3259.2 (Rev. 64). What matters is that the Manual contains the official federal agency interpretation of the law that applies to the Trust. See Manual, supra ch. 3, § 3259.2 (Rev. 64).

The instant case turns upon whether, given the Trust provisions and the facts of the case, there are "any circumstances" under which "payment" from the Trust could have been "made to or for the benefit of" the applicant. 42 U.S.C. § 1396p(d)(3)(B)(i). A "payment" from a trust "is any disbursal from the corpus of the trust or from income generated by the trust which benefits the party receiving it." Manual, supra ch. 3, § 3259.1(A)(8) (Rev. 64). A "payment" from a trust "may include actual cash, as well as noncash or property disbursements, such as the right to use and occupy real property." Manual, supra ch. 3, § 3259.1(A)(8) (Rev. 64).

Section 3259.6 of the Manual defines payments made "for the benefit" of the individual applying for Medicaid benefits as

> payments of any sort, including an amount from the corpus or income produced by the corpus, paid to another person or entity such that the individual derives some benefit from the payment. For example, such payments could include purchase of clothing or other items, such as a radio or television, for the individual. Also, such payments could include payment for services the individual may require, or care, whether medical or personal, that the individual may need. Payments to maintain a home are also payments for the benefit of the individual.

Manual, supra ch. 3, § 3259.6(D) (Rev. 64) (emphases added).

The Manual advises that "[i]n determining whether payments can or cannot be made from a trust to or for an individual," one should "take into account any restrictions on payments, such as use restrictions, exculpatory clauses, or limits on trustee discretion that may be included in the trust." Manual, supra ch. 3, § 3259.6(E) (Rev. 64). The Manual also gives the following example:

> For example, if an irrevocable trust provides that the trustee can disburse only $1,000 to or for the individual out of a $20,000

9

trust, only the $1,000 is treated as a payment that could be made under the rules in [42 U.S.C. § 1396p(d)(3)(B)]. The remaining $19,000 is treated as an amount which cannot, under any circumstances, be paid to or for the benefit of the individual. On the other hand, if a trust contains $50,000 that the trustee can pay to the grantor only in the event that the grantor needs, for example, a heart transplant, this full amount is considered as payment that could be made under <u>some</u> circumstances, even though the likelihood of payment is remote. Similarly, if a payment cannot be made until some point in the distant future, it is still payment that can be made under some circumstances.

<u>Manual</u>, <u>supra</u> ch. 3, § 3259.6(E) (Rev. 64) (emphasis added); <u>see</u> <u>Heyn v. Director of Office of Medicaid</u>, 48 N.E.3d 480, 483 (Mass. App. Ct. 2016) (explaining that to meet the "any circumstances" test, the circumstances "need not have occurred, or even be imminent"); <u>cf</u>. <u>Lebow v. Com'r of Div. of Medical Assistance</u>, 740 N.E.2d 978, 983 (Mass. 2001) (decided under 1986 law) (in examining whether the trustees were allowed to exercise any discretion in making distributions to the grantor, the court explains that "[t]he issue is not whether the trustee has the authority to make payments to the grantor at a particular moment in time," but "[r]ather, if there is <u>any</u> state of affairs, at <u>any</u> time during the operation of the trust, that would permit the trustee to distribute trust assets to the grantor").

With the Manual's guidance in mind, which we find persuasive, <u>see</u> <u>Sai Kwan Wong</u>, 571 F.3d at 260-62, we examine the Trust provisions. Under the Trust, the applicant, as donor, "retain[ed] at least some powers over the trust corpus," <u>Doherty v. Director of Office of Medicaid</u>, 908 N.E.2d 390, 392 (Mass. App. Ct. 2009), including the powers "to appoint any part or all of the undistributed income of the Trust Fund to any one or more of the Legatees" and "to appoint any part or all of the principal of the Trust Fund, outright or upon trusts, conditions or limitations, to any one or more of the Legatees." <u>See</u> <u>id</u>. In addition, the Trust reserved to the applicant, as donor, the power to require the Trustee "to accumulate any or all of the income of the Trust Fund." <u>See</u> <u>id</u>. The Trust Agreement did not limit the applicant's ability to impose conditions upon the appointment of Trust principal to any one of the Legatees. Also, in her capacity as donor, the applicant reserved to herself the "right to alter the order and number of the successor Trustees . . . , or to name additional Trustees or successor Trustees."

In her capacity as Trustee, the applicant had even more authority. For instance, she had the "uncontrolled discretion" to adjust between income and principal. <u>See</u> <u>id</u>. at 391-92. As trustee, the applicant also had the authority, without limitation, to "terminate the Trust by distributing the principal and accumulated income of the Trust Fund," if, in her judgment, she might "lose eligibility for substantial cash benefits or medical or other services" because of

the Trust and if, in her judgment, "such loss of eligibility would likely necessitate expenditures from the Trust for or on [her] behalf [as the donor] at a rate expected to deplete the Trust substantially and to defeat its supplemental and long-term purposes."

Further, although Clause 4.1.1 does not constitute a "legal obligation," it evinces the applicant's general intent that Trust disbursements be used for her benefit. See id. at 392. That clause expresses the applicant's "hope" that if the Trust is terminated during her lifetime, the Legatees will use Trust assets "to supplement the income and the governmental benefits to which [she] may be entitled by reason of age, disability or otherwise."

Additionally, once the applicant resigned as Trustee in 2008, there was nothing in the Trust Agreement to preclude her from requiring her children, as a condition of their receipt of the Trust principal, to use those funds for her benefit. After the applicant's resignation, the only limitation under the Trust Agreement was that David could not make a distribution that benefitted him personally or "anyone whom [he] ha[d] a legal obligation to support." The petitioner observes that David had no obligation to support the applicant.

Although the petitioner argues otherwise, the fact that the applicant was not a Trust beneficiary is not dispositive. In contrast to the pre-1993 law, see 42 U.S.C. § 1396a(k), an irrevocable trust is a countable asset under the current law even when the applicant is not a beneficiary, provided that there are "any circumstances under which payment from the trust could be made . . . for the benefit of the [applicant]," 42 U.S.C. § 1396p(d)(3)(B)(i). Given the Trust's provisions and the specific facts of this case, we hold that the AAU lawfully and reasonably concluded that there were circumstances under which payment from the Trust could be made to benefit the applicant. See Petition of Maxi Drug, 154 N.H. at 655-56.

The cases from New York upon which the petitioner relies to argue for a different result are distinguishable. See Verdow ex rel. Meyer v. Sutkowy, 209 F.R.D. 309, 310 (N.D.N.Y. 2002); Spetz v. New York State Dept. of Health, 737 N.Y.S.2d 524 (Sup. Ct. 2002). The issue in both cases was whether the grantor's retained power to change the trust beneficiaries made the trusts "available" for the purpose of determining Medicaid eligibility. See Verdow, 209 F.R.D. at 315-16; Spetz, 737 N.Y.S.2d at 525-26. Under a New York statute, "any trust can be revoked, provided that all beneficiaries consent, in writing, to the revocation." Verdow, 209 F.R.D. at 315; see Spetz, 737 N.Y.S.2d at 526. The appellate argument in both cases was that the grantors could use their retained power to change beneficiaries to individuals who were amenable to revoking the trusts, and, therefore, that the trusts were actually revocable and available for Medicaid eligibility purposes. Verdow, 209 F.R.D. at 315; Spetz, 737 N.Y.S.2d at 526. The courts in both cases rejected the argument, finding that the claim that the grantor would collude with the beneficiaries in this way

11

was speculative. Verdow, 209 F.R.D. at 316; Spetz, 737 N.Y.S.2d at 526-27. Both courts declined to conclude that the speculative possibility of collusion rendered the trusts revocable, and, therefore, "available" to the grantors for the purpose of determining Medicaid eligibility. Verdow, 209 F.R.D. at 316; Spetz, 737 N.Y.S.2d at 526-27.

In this case, unlike Verdow and Spetz, there is no dispute that the Trust is an irrevocable trust. Moreover, unlike the grantors in Verdow and Spetz, the applicant in this case retained broad powers over the Trust, in her capacity both as donor and as Trustee, including the power to make a distribution to a legatee conditioned upon that legatee using the distribution for the applicant's benefit. In addition, although there is no evidence of collusion in this case, collusion is arguably encouraged by Clause 4.1.1, which provides that, in the event that the Trust's existence disqualifies the applicant for Medicaid benefits, the applicant "suggests" that the Trust be terminated and that the Legatees (her children) use Trust assets "to supplement the income and . . . governmental benefits and services to which [she] may be entitled." By virtue of these provisions and others, the circumstances under which payments from the Trust could be made to benefit the applicant in this case are not "entirely speculative," Verdow, 209 F.R.D. at 316, but, rather, are specifically anticipated under the Trust Agreement.

In a motion to submit late authority, the petitioner relies upon Heyn, 48 N.E.3d 480. Although we grant the petitioner's motion to submit Heyn for our review, we do not find it persuasive.

In Heyn, the trust corpus consisted of the applicant's former residence in which she retained a life estate. Heyn, 48 N.E.3d at 482. At some point after the trust was created, the applicant moved into a skilled nursing facility, where she lived until her death in 2013. Id. The state agency had found the applicant ineligible for Medicaid benefits because her former residence was countable as an asset and exceeded the allowable limit. Id. A hearing officer had upheld that decision, and, ultimately, the appellate court reversed the hearing officer's ruling. Id. at 482-83.

Whether the applicant's life estate rendered her ineligible for Medicaid benefits was not an issue in the appeal. Id. at 482 n.3. Nor was there a question concerning the applicant's receipt of income from the trust. Id. at 485 n.11. The sole issue in the case was whether trust principal was countable as an asset for the purpose of determining the applicant's eligibility for Medicaid. See id. at 483-84. The hearing officer had reasoned, in part, that because the trust allowed the applicant to appoint all or any part of the trust principal to her issue, free of trust, she "could direct conveyance of the trust property to one of her children, who could in turn convey it to her." Id. at 486. In rejecting this reasoning, the court explained that a provision that makes "trust

12

principal available to persons other than the [applicant] does not by its nature make it available to the [applicant]." Id.

Heyn is distinguishable from this case. Unlike the Trust here, the trust in Heyn expressly precluded the trustee from distributing any part or all of the principal to the applicant. Id. at 484 n.8. Moreover, unlike the Trust in this case, which conceivably allows the applicant to condition a distribution to a Legatee upon that Legatee using the distribution for her benefit, the trust in Heyn did not authorize the applicant to impose any conditions upon the appointment of principal to her issue. See id. at 486. Further, Clause 4.1.1 of the Trust in this case evinces the applicant's general intent that Trust disbursements be used for her benefit, see Doherty, 908 N.E.2d at 392; there is no indication that the trust in Heyn contained a similar clause. Nor is there any evidence that the applicant in Heyn was ever one of the trust's trustees.

Finally, the petitioner argues that our decision in Appeal of Lowy is dispositive. The trust in that case was a "special needs trust." Appeal of Lowy, 156 N.H. at 58. Such trusts fall within the exception to the general rule that trusts are counted as assets for the purpose of determining Medicaid eligibility. See Lewis, 685 F.3d at 333; see also 42 U.S.C. § 1396p(d)(4). Pursuant to 42 U.S.C. § 1396p(d)(4)(A), a State must exclude a special needs trust as an asset in eligibility determinations "only if, among other considerations, the state will be repaid from the trust's corpus upon the beneficiary's death for medical assistance provided to the beneficiary during his lifetime." Appeal of Lowy, 156 N.H. at 58.

The primary issue in Appeal of Lowy was whether the "payback provision" in the special needs trust was sufficient under federal law to render the trust not countable as an asset. See id. at 58-59. The trust's payback provision stated that, upon the beneficiary's death, any amounts remaining in the trust estate were to be paid to the State "to the extent required by law." Id. (quotation and emphasis omitted). The AAU had found that the phrase "to the extent required by law" impermissibly conditioned "the obligation to repay on the future existence of an independent legal requirement of repayment, which might not occur," and, therefore, because the trust did "not contain the unconditional repayment obligation required for exclusion," the trust was countable as an asset. Id. (quotation omitted). We disagreed. See id. at 61-62. We concluded that to construe the phrase "as referencing anything other than a general requirement that the promise contained in the payback provision be construed in accordance with the law would require us to ignore the settlors' clear intent," which was to create a trust that qualified for exclusion under 42 U.S.C. § 1396p(d)(4)(A). Id. at 62.

The petitioner contends that, consistent with Lowy, we must interpret the Trust at issue to "give[ ] meaning to the intention[ ] of the [applicant] . . . to keep the Trust assets out of inclusion as countable Medicaid resources." This

we cannot do. The issue of whether the Trust assets are countable for the purpose of determining the applicant's eligibility for Medicaid is governed by federal law. Contrary to the petitioner's assertions, to determine whether there were circumstances under which payment from the Trust could have been made for the applicant's benefit, see 42 U.S.C. § 1396p(d)(3)(B)(i), we have not "ventured into the land of melodramas and fantasy," but rather, we have examined the record in the case and interpreted the Trust's provisions consistent with their plain meaning.

Although it might be argued that the provisions upon which we rely "are, at most, economically meaningless administrative boilerplate, that . . . do not confer upon the trustees any discretionary authority to invade principal for [the applicant's] benefit, . . . we remain unconvinced that [the Legatees were] unable, in any reasonably foreseeable circumstance, to invade trust assets for [her] benefit." Doherty, 908 N.E.2d at 392. "When considered as a whole, what strikes us most strongly is that [the Trust] constitutes a remarkably fluid legal vehicle, intelligently structured to provide both [the applicant] and the trustee[ ] maximum flexibility to respond to [her] changing life needs." Id. In this light, we cannot say that the AAU's conclusion that the Trust constitutes a "countable asset" for the purpose of determining the applicant's Medicaid eligibility is infirm as a matter of law. See id.

III. Conclusion

Given the facts of this case, we cannot say that there are no circumstances under which payments from the Trust could be made "for the benefit" of the applicant. 42 U.S.C. § 1396p(d)(3)(B)(i); see Doherty, 908 N.E.2d at 392. "Finally, we take this opportunity to stress that we have no doubt that self-settled, irrevocable trusts may, if so structured, so insulate trust assets that those assets will be deemed unavailable to the settlor." Doherty, 908 N.E.2d at 393. The Trust in this case is not such a vehicle. In our view, the Trust, as structured, allows the applicant "a degree of discretionary authority that would . . . permit [her] to enjoy her assets, preserve those assets for her heirs, and receive public assistance, to, in effect, have her cake and eat it too." Id. (quotation and brackets omitted). Congress has declared a contrary intent — "that Medicaid benefits be made available only to those who genuinely lack sufficient resources to provide for themselves." Id. "We perceive no reason in this case to deviate from that mandate." Id.

Petition denied.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.