FILED

06/29/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0534

DA 20-0534

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 158

ESTATE OF MARILYN SCHEIDECKER,

       Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

       Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. BDV-2019-1221
                  Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Sol Lovas, Janna Wittenberg, Legacy Law Center, P.C., Billings, Montana

        For Appellee:

            April Armstrong, Department of Public Health and Human Services,
            Great Falls, Montana

        For Amicus National Academy of Elder Law Attorneys, Inc., and Montana Elder
        Law, Inc.:

            T. Thomas Singer, Amanda G. Hunter, Axilon Law, Billings, Montana

                        Submitted on Briefs:  April 14, 2021

                                Decided:  June 29, 2021

Filed:

                        _____
                                 Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Estate of Marilyn Scheidecker ("the Estate") appeals a First Judicial District Court order affirming an Administrative Law Judge's proposed order that trust principal consisting of a jointly owned home constitutes a countable asset for the purposes of Marilyn Scheidecker's Medicaid eligibility. The dispositive issue on appeal is whether there are any circumstances under which the trust's principal could be returned to Marilyn or used for her benefit. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In 2006, Marilyn purchased a house in Billings, Montana, which she moved into with her sister, Glenda Martin. In early 2008, Marilyn sold a one-half interest in the house to Glenda. Soon thereafter, the two established the Scheidecker-Martin Irrevocable Trust ("SM Trust") by each transferring into the trust her half-interest in the house. The house was and currently remains the SM Trust's only asset. Per the terms of the SM Trust, both sisters continued to live in the house. In 2016, Marilyn moved into a long-term care facility.

¶3 In 2017 Marilyn applied for Medicaid. Her application was denied based on the Montana Department of Public Health and Human Services' ("Department") conclusion that Marilyn's one-half interest in the SM Trust's principal was a countable resource placing her over Medicaid's resource limit. Marilyn requested a fair hearing and the parties submitted cross-motions for summary judgment. The Administrative Law Judge issued a Proposed Order upholding the denial. She concluded that the terms of the SM Trust rendered it a revocable trust and thus its full corpus constituted a countable resource for Medicaid eligibility purposes under 42 U.S.C. § 1396p(d)(3)(A). The Board of Public

2

Assistance for the State of Montana affirmed the Proposed Order, and Marilyn filed a Petition for Judicial Review.

¶4 The District Court issued its Judicial Review Petition Order ("Order") in October 2020.[1] The District Court concluded that the Administrative Law Judge erred in finding the SM Trust was revocable. It reasoned that Marilyn, as the settlor, had no authority or power to amend or revoke the trust. The District Court observed that pursuant to the terms of the trust, Marilyn waived all right and power to consent to its modification. The court found no evidence that the SM Trust's beneficiaries would consent to its termination or that a court would allow any modification. Additionally, the District Court noted the SM Trust represents itself as an irrevocable trust and provides that the "Trustee has no power to invade principal for the Settlor's benefit and shall not do so under any circumstances."

¶5 The District Court nonetheless affirmed the Administrative Law Judge's ultimate conclusion that the SM Trust is a countable asset pursuant to 42 U.S.C. § 1396p(d)(3). The court held that, despite the SM Trust's specific language precluding the trustee from using the principal for Marilyn's benefit, should the trust be terminated "the beneficiaries *could* thereafter, individually, jointly, directly, or indirectly, give Marilyn this trust property for her benefit." (Emphasis original.) It thus concluded that under 42 U.S.C. § 1396p(d)(3)(B), circumstances exist by which payments from the SM Trust's corpus could be made to or for Marilyn's benefit. The court upheld the Administrative Law

---

[1] Marilyn died during the pendency of the case, and her Estate continued as petitioner in her place.

3

Judge's and the Montana Board of Public Assistance's denial of Marilyn's Medicaid application.

## STANDARD OF REVIEW

¶6 Judicial review of the Board's denial is governed by the Montana Administrative Procedure Act. *See Timm v. Mont. Dep't of Pub. HHS*, 2008 MT 126, ¶ 27, 343 Mont. 11, 184 P.3d 994 (citation omitted). "In contested cases, district courts review administrative decisions to determine whether the findings of fact are clearly erroneous and whether the agency determined the law correctly; we review the district court's decision in the same way." *Arlington v. Miller's Trucking, Inc.*, 2015 MT 68, ¶ 10, 378 Mont. 324, 343 P.3d 1222 (citation omitted). The parties do not dispute the material facts; we therefore review only the District Court's conclusions of law, to which we apply a de novo standard. *Gordon v. Kuzara*, 2012 MT 206, ¶ 13, 366 Mont. 243, 286 P.3d 895 (citation omitted). We review the court's interpretation of a statute for correctness. *Blanton v. Dep't of Pub. HHS*, 2011 MT 110, ¶ 21, 360 Mont. 396, 255 P.3d 1229 (citation omitted).

## DISCUSSION

¶7 Because the intricacies of Medicaid are complex—"almost unintelligible to the uninitiated"—we begin with an overview of Medicaid eligibility. *Wos v. E.M.A.*, 568 U.S. 627, 648, 133 S. Ct. 1391, 1404 (2013) (citations omitted; Roberts, C.J., dissenting). Medicaid is a need-based assistance program offering reduced-cost medical care; it is jointly funded and administered by the individual states and the federal government. *Ark. HHS v. Ahlborn*, 547 U.S. 268, 275, 126 S. Ct. 1752, 1758 (2006). Though states are not required to participate in the Medicaid program, all states, including

Montana, do so.  *See* § 53-6-101, MCA.  In this cooperative program, the federal government pays fifty to eighty-three percent of patient care costs; the state pays the remainder and complies with federal statutory requirements regarding the program's administration, collection of information, and most relevant here, eligibility determinations.  *Ahlborn*, 547 U.S. at 275, 126 S. Ct. at 1758.  Montana, therefore, may create its own plan for eligibility but must comply with federal law "with respect to liens, adjustments and recoveries of medical assistance correctly paid[,] transfers of assets, and treatment of certain trusts."  42 U.S.C. § 1396a(a)(18); *see Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479, 122 S. Ct. 962, 966 (2002).  Also, state eligibility requirements must consider "only such income and resources as are, as determined in accordance with the standards prescribed by the Secretary, *available to* the applicant."  *Blumer*, 534 U.S. at 479, 122 S. Ct. at 966 (emphasis original; quoting 42 U.S.C. § 1396a(a)(17)(B)).

¶8     Medicaid is "designed to be the payer of last resort, available only when no other source is liable for the expense."  *Blanton*, ¶ 49 (citing S. Rep No. 99-146 at 313 (1985)).  Congress nonetheless has recognized and circumscribed the management of assets to allow individuals to qualify for Medicaid benefits.  "Medicaid planning" thus has developed to secure Medicaid eligibility by preemptively disposing of assets before applying for Medicaid benefits or services.  *See Guilfoil v. Sec'y of the Exec. Office of Health & Human Servs.*, 162 N.E.3d 627, 630 (Mass. 2021) (citing *Cohen v. Comm'r of the Div. of Med. Assistance*, 668 N.E.2d 769, 772 (Mass. 1996)).  An individual may, for example, dispose of assets by placing them into a trust constructed in such a way that the assets are not legally

5

possessed by the individual, yet the individual still retains some amount of access to them. Recognizing the reality of this type of Medicaid planning, Congress in 42 U.S.C. § 1396p(d)(3)(A) constrained the use of such trusts by considering the assets of a revocable trust as "available" to a Medicaid applicant. *Guilfoil*, 162 N.E.3d at 630. Congress addressed irrevocable trusts through a separate provision found in 42 U.S.C. § 1396p(d)(3)(B). That provision reads:

> (B) In the case of an irrevocable trust—
>
>> (i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—
>>
>>> (I) to or for the benefit of the individual, shall be considered income of the individual, and
>>>
>>> (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c)[2]; and
>>
>> (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c), and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

---

[2] 42 U.S.C. § 1396p(c) provides for a "look-back" period penalizing individuals who transfer assets a given number of years before applying for Medicaid with a period of ineligibility for benefits. Because Marilyn transferred the house into the SM Trust many years before applying for Medicaid, the look-back period does not apply here.

¶9      Montana's Medicaid eligibility requirements, found in § 53-6-131, MCA, allow the Department to establish income and resource limitations and rules pertaining to Medicaid eligibility, provided that they are within the amounts permitted by federal law. Section 53-6-131(3)(a), MCA; *see also* § 53-6-113(6)(a), MCA. To that end, the Department has established a maximum amount of resources a person may hold to qualify for Medicaid. At the time of Marilyn's application, the value of her half-interest in the SM Trust far exceeded that eligibility threshold.

¶10     The Administrative Law Judge and the Board of Public Assistance denied Marilyn's Medicaid application after determining that the SM Trust is revocable. The District Court disagreed and concluded that the trust is not revocable. The Department does not appeal that ruling, and we do not disturb it.[3] We thus accept the District Court's conclusion that the SM Trust is irrevocable and turn to whether there are "any circumstances" through which the trust's corpus could be accessed by Marilyn.

¶11     The Estate argues that the language of 42 U.S.C. § 1396p(d)(3)(B) is clear that if payments cannot be made from the principal of an irrevocable trust to the individual Medicaid applicant, then the principal is not available or countable for the purposes of Medicaid eligibility; likewise, if the payment cannot be made from the trust's income to the individual, then the income is not available or countable. The Estate also clarifies that it is not contesting that the SM Trust's income is available to Marilyn, only that the

---

[3] We decline the Estate's invitation to examine the Department's contrary interpretation under its Montana Medicaid Manual that the SM Trust can be deemed to be revocable, as the Department does not make such an argument. We avoid issuing advisory opinions. *See Arnone v. City of Bozeman*, 2016 MT 184, ¶ 7, 384 Mont. 250, 376 P.3d 786.

SM Trust's principal is not available or countable because under the terms of the trust there are no circumstances through which Marilyn could access its principal.

¶12 The Department agrees that the "any circumstances" test applies here but differs in its interpretation of the test and the terms of the SM Trust. It argues that the District Court upheld the Administrative Law Judge's conclusion that Marilyn retains numerous "incidents of ownership" over the trust's corpus and that the "any circumstances" test includes imaginary or improbable circumstances, which the Estate ignores. The Department contends the "SM Trust assets are countable resources because they are available for [Marilyn's] use and benefit during her lifetime and distribution upon her death in nearly every way that is material to ownership." The Department contends that nothing in the SM Trust precludes mortgaging the principal to pay for a debt owned by Marilyn, therefore making the principal "available for her benefit." The Department adds that Marilyn retains the right to reside in the home and is the owner of the trust property for tax purposes, and that if trust assets are sold, the sale proceeds would be held in a separate trust and administered for Marilyn's benefit.

¶13 This is an issue of first impression in Montana. We find guidance in the decisions from several other states with substantially similar Medicaid laws that have addressed the countability of irrevocable trusts under 42 U.S.C. § 1396p(d)(3)(B). The use of the term "any" in (d)(3)(B)(i), "if there are *any* circumstances under which payment from the trust could be made to or for the benefit of the individual," indicates that courts are to consider "not only obvious circumstances, but also those that are hypothetical or even unlikely." (Emphasis added); *see Hegadorn v. Dep't of Human Servs. Dir.*, 931 N.W.2d 571,

584 (Mich. 2019) (citing *Merriam-Webster's Collegiate Dictionary* (11th ed.)). The statute also clearly states, however, that any payment made "to or for the benefit of the individual" must be made "from the trust." *See Hegadorn*, 931 N.W.2d at 584 ("there must be a nexus between the trust and the recipient or beneficiary of the payment"). The "any circumstances" provision in 42 U.S.C. § 1396p(d)(3)(B) contains another caveat: payments to the individual from the trust's corpus and from the trust's income are each treated separately. 42 U.S.C. § 1396p(d)(3)(B)(i) ("if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, *or* the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual" (emphasis added)). Therefore, if payments could be made from only the trust's income, then only the income of the trust is counted as available to the Medicaid applicant; if payments could be made from only the corpus, only the corpus is considered available. *See Hegadorn*, 931 N.W.2d at 584-85; *Daley v. Sec'y of the Exec. Office of Health & Human Servs.*, 74 N.E.3d 1269, 1275 (Mass. 2017). The Estate does not contest that the SM Trust's income is available to Marilyn; its argument is focused solely on the availability of the trust's corpus for Medicaid eligibility purposes.

¶14    We employ Montana law in interpreting the trust's terms to determine whether, under federal law, the trust's principal is a countable asset. *See generally Hofer v. Mont. Dep't of Pub. HHS (In re Hofer)*, 2005 MT 302, ¶¶ 15-29, 329 Mont. 368, 124 P.3d 1098 (applying Montana law in determining whether an express trust existed between the parties for Medicaid eligibility purposes); *Guilfoil*, 162 N.E.3d at 632-34

9

(applying state law to determine whether a written instrument was a "nominee trust" or a "true trust" for Medicaid eligibility purposes). This Court construes the words of a trust according to their ordinary grammatical sense; the plain language of a trust is controlling. *In re Cecilia Kincaid Gift Tr.*, 2012 MT 119, ¶ 7, 365 Mont. 179, 278 P.3d 1026. "It is a basic principle of trust law that a trust is to be managed to carry out the [settlor's] intent." *Collins v. Norwest Inv. Mgmt. & Tr. (in Re Estate of Berthot)*, 2002 MT 277, ¶ 35, 312 Mont. 366, 59 P.3d 1080 (citing *In re Estate of Lindgren*, 268 Mont. 96, 100, 885 P.2d 1280, 1282 (1994)). The settlor's intentions control the trust's disposition; the intent is to "be found from all parts of the [trust] . . . construed in relation to each other . . . to form one consistent whole." *Collins*, ¶ 35 (quoting *In re George Tr.*, 253 Mont. 341, 344, 834 P.2d 1378, 1380 (1992)).

¶15 The District Court found that the SM Trust contains specific language precluding the trustee from using the trust's corpus for Marilyn's benefit. The trust provides: "The Trustee has no power to invade principal for the Settlor's benefit and shall not do so under any circumstance[s]." The District Court concluded, however, that in the event the SM Trust was terminated, Montana law would require the trustee to "distribute the trust property as agreed by the beneficiaries." *See* § 72-38-411(1), (2), MCA. The District Court reasoned that because the beneficiaries could, in that circumstance, "individually, jointly, directly, or indirectly, give Marilyn the trust property for her benefit," the SM Trust's corpus is a countable asset.

¶16 Section 72-38-411(1), MCA, states that "[a]n irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries, even if the modification or

10

termination is inconsistent with a material noncharitable purpose of the trust." Article VI, Section A of the SM Trust expressly states that Marilyn waives "all right and power as Settlor[] to alter, amend, revoke or terminate any provision of this [trust] in any way." The express terms of the SM Trust disclaim Marilyn's ability to terminate the trust. These terms take precedence over the Uniform Trust Code's default provisions. Section 72-38-105(2), MCA.[4] Therefore, by the express language of the SM Trust's terms, a court could not recognize as legitimate any attempt by Marilyn to terminate or modify the trust under § 72-38-411(1), MCA.

¶17 Section 72-38-411(2), MCA, provides that "an irrevocable trust may be terminated upon consent of all the beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust." The SM Trust states as its material purpose: "to supplement any benefits [Settlors] receive (or for which [Settlors] may be or become eligible) through or from various governmental assistance programs and not to supplant any such benefit." The SM Trust's plainly stated material purpose is to *supplement* any benefits, like Medicaid, that Marilyn may receive. Both the Administrative Law Judge and the District Court recognized this purpose and characterized the SM Trust as a form of Medicaid planning designed to make Marilyn eligible for Medicaid benefits. The Department acknowledges that federal law permits trusts designed

---

[4] Section 72-38-105(2)(d), MCA, prohibits the terms of a trust from eliminating the power of a court to modify or terminate a trust; the SM Trust contains no such provision but eliminates only the settlor's ability to modify or terminate.

11

to make their settlors Medicaid eligible; it contests only whether the SM Trust's specific terms meet the "any circumstances" standard.

¶18    Because the SM Trust's plain language establishes a material purpose to supplement and not to supplant benefits like Medicaid that Marilyn may receive, so long as she lived no court asked to terminate the SM Trust under § 72-38-411(2), MCA, could reasonably conclude that the "continuance of the trust is not necessary to achieve any material purpose of the trust." Terminating the SM Trust would terminate Medicaid eligibility and thereby defeat the trust's material purpose.[5] We acknowledge the possibility that the SM Trust beneficiaries could petition a court to terminate the trust pursuant to § 72-38-411(2), MCA. Only through a court erroneously concluding that continuance of the trust is not necessary to achieve any of its material purposes, however, could the beneficiaries gain access to the trust's corpus and distribute it to Marilyn under § 72-38-411(4), MCA. As Amicus National Academy of Elder Law Attorneys, Inc., and Montana Elder Law, Inc., note, a settlor's eligibility for Medicaid coverage is determined by looking at the terms of the trust, not by what the trustee or beneficiaries hypothetically could agree to do *despite* the terms of the trust. *See generally* State Medicaid Manual, HCFA Pub. No. 45-3, Transmittal 64 § 3259 (Nov. 1994). Even including those circumstances that are highly unlikely or hypothetical, this Court does not construe the "any circumstances" provision in 42 U.S.C. § 1396p(d)(3)(B) to encompass a court's or agency's misinterpretation of a written

---

[5] Because the "any circumstances" test concerns only whether the individual Medicaid applicant can access a trust's corpus, a court may conclude that the trust no longer serves a material purpose after the applicant is deceased. In that situation, however, there is no way that a "payment from the trust could be made to or for the benefit of the individual." 42 U.S.C. § 1396p(d)(3)(B)(i).

12

instrument's terms or purposes. Such a speculative possibility does not render the trust "available" to Marilyn for the purpose of determining Medicaid eligibility. *See Spetz v. N.Y. State Dep't of Health*, 190 Misc. 2d 297, 299, 737 N.Y.S.2d 524, 526 (Sup. Ct. 2002) (a "speculative possibility of a revocation" through statutory provisions by the actions of a trust's beneficiaries does not render a trust "potentially available"). We therefore conclude that the District Court was incorrect in its application of the federal statute.

¶19     The Department argues that the District Court's decision nonetheless should be affirmed, as there are several other avenues through which payments from the SM Trust's corpus could be made for Marilyn's benefit beyond just § 72-38-411, MCA. First, it argues that "nothing in the SM Trust precludes a mortgage for debt owed by [Marilyn]"; such a mortgage is allowed by the trust's specific terms. In support of this argument, the Department cites Article IV(A)(1)[6] of the trust. It says:

> If the home is used as security for a debt owned[7] by either Settlor, that Settlor is solely responsible for all payments on the secured debt, and further indemnifies the other against any and all loss, liability or expense arising from the use of the home as security for the debt.

---

[6] Article IV(A)(2) of the trust contains a substantially similar provision pertaining to situations where only one of the settlors is residing in the house. Neither party distinguishes or otherwise comments on this subsection, and we therefore assume its practical and legal implications are the same as those in Article IV(A)(1).

[7] The SM Trust's specific language uses the word "owned" despite the Department's argument the trust does not "preclude[] a mortgage for debt *owed* by [Marilyn]." (Emphasis added.) Because neither party addresses this difference or argues that the difference between "owned" and "owed" affects the trust's interpretation, we do not address this discrepancy.

13

The Estate argues that this provision recognizes only a pre-existing debt secured by the trust property and that "the debt secured by the house prior to its transfer to the [t]rust was the debt of the grantor to be paid by the grantor, not the [t]rust."

¶20 Based upon the parties' stipulated facts, this appears to be the case. In 2006 Marilyn originally purchased the home by paying half the asking price up front and entering into a Contract for Deed with the sellers for the balance. In September 2007, Marilyn's daughter took over the seller's interest in the Contract for Deed by Assignment of Seller's interest. In January 2008, Marilyn sold one-half of her interest in the house to her sister Glenda by partial Assignment of Buyer's Interest in the Contract for Deed, with special terms stating that Marilyn's debt on the Contract for Deed will be her own responsibility, and that Glenda's promissory note to Marilyn will be Glenda's responsibility. The payments on the Contract for Deed were completed on September 2, 2008, a week before the SM Trust was established.

¶21 Additionally, despite Article IV(A)(1)'s provisions for circumstances in which the home is used as security for a settlor's debt, the provision does not authorize or provide a mechanism through which the Trustee could apply for or enter into such an agreement. And reviewing the SM Trust as a whole, not only does this Court find no provisions authorizing such a security agreement, but instead several provisions indicating such an agreement is impermissible: "[t]he purpose and intent of this [t]rust is to supplement any benefits [Settlors] receive . . . . All actions of the Trustee under this [t]rust shall be directed toward complying with this purpose and intent"; and "[t]he Trustee has no power to invade the principal for the Settlor's benefit and shall not do so under any circumstances."

14

Whatever the purpose of Article IV(A)(1), neither reading it on its own nor in conjunction with the rest of the trust supports the Department's argument that it allows any circumstance through which Marilyn could receive a "payment" from the SM Trust's corpus.

¶22 The Department also argues that Marilyn's right to reside in the home, and responsibility to make repairs, insure, pay taxes on the home, pay for utilities, and various other "incidents of ownership" demonstrates that the SM Trust's corpus is available for her benefit. The ability to live in a residence owned by a trust, however, does not grant the person residing in the residence access to that trust's corpus. The residence itself is a trust asset—it may be sold for fair market value and adds to the trust's ability to generate income through rents collected for use or occupancy. *See generally Lane v. Caler*, 2013 MT 108, ¶ 4, 370 Mont. 30, 299 P.3d 827. Any such income would be "countable" income for Medicaid purposes. *See* Department of Health and Human Services, Medical Assistance (MA) Policy Manual, CMA 501-1 (2016). Because the SM Trust permits Marilyn and her sister the right to reside in the residence, by choosing to do so they forego the ability to generate income through renting the house to others. *See Daley*, 74 N.E.3d at 1279-80. As the *Daley* Court explained:

> [I]f a grantor transfers to an irrevocable trust ownership of a condominium unit and the trustee decides to rent the unit to a third person and pay the rental income to the grantor, there is a payment of rental income from the trust to the grantor. If the grantor instead exercises his or her right of use and occupancy under the terms of the trust, and decides to reside in the unit or permit a family member to reside there without the payment of rent, the fair market value of the rent that otherwise would have been earned

15

and treated as actual trust income is deemed paid to the grantor under Transmittal 64.[8]

> This payment, however, is not a payment from the corpus of the trust; the grantors do not have the power through their right of use and occupancy to sell the property under any circumstances. It is instead a payment from the "income on the corpus." Such payments, whether actually received as rental income or imputed as the fair market rental value of the grantors' occupancy of the home, may be countable as income of the grantors, but the value of the home is not thereby countable as their asset.

*Daley*, 74 N.E.3d at 1280.

¶23 It is the SM Trust that possesses the deed and title to the residence; Marilyn is unable to alienate, divide, transfer, or devise the home. Indeed, the SM Trust document contains numerous provisions stating how the Trustee is to manage the property and exercise the rights associated with ownership. Marilyn's and her sister's discretion regarding the rights associated with the property begins and ends with their decisions to reside there or not. It is true that while either sister resides at the residence, she is responsible for any necessary insurance, repairs, utilities, taxes, and so forth. The SM Trust is clear, though, that these payments are the personal responsibility of Marilyn or her sister. The Department does not present an argument explaining how payments made from Marilyn's personal funds amount to a "circumstance[] under which payment from the trust

---

[8] "Transmittal 64" refers to the State Medicaid Manual, a federal manual providing instruction to state officials in applying Medicaid provisions. The portion of the manual referred to here defines a "payment" from a trust as "any disbursal from the corpus of the trust or from income generated by the trust which benefits the party receiving it. A payment may include actual cash, as well as noncash or property disbursements, such as the right to use and occupy real property." State Medicaid Manual, HCFA Pub. No. 45-3, Transmittal 64 § 3259.1.A.8 (Nov. 1994).

could be made to or for the benefit of the individual" Medicaid applicant. 42 U.S.C. § 1396p(d)(3)(B)(i).

¶24 The Department also argues that Marilyn has access to the SM Trust's corpus because "if the trust assets were sold, the sale proceeds would be held in a separate trust and administered for her benefit during her lifetime." The Department again is half correct. Should the property be sold, the SM Trust provides that the sale proceeds would be deposited equally into two separate trusts, one for each sister, which will be administered for each individual's "benefit." But the trust goes on to make clear that only the income from the resultant trusts shall be available to the Settlors, and that "[t]he Trustee has no power to invade principal for the Settlor's benefit and shall not do so under any circumstances." The Department does not elaborate on how, despite this provision, Marilyn would be able to access the resultant trust's principal for her benefit.

¶25 Finally, the Department points to the Conditional Case Processing and Assistance Agreement ("Conditional Agreement") Marilyn signed as evidence that she has access to the trust's corpus. The Department presented Marilyn with the Conditional Agreement after she expressed her intent to appeal the initial denial of her Medicaid application. The Conditional Agreement provides that while the current action is pending, the Department will treat the SM Trust as inaccessible and therefore not a countable resource for Medicaid eligibility so long as Marilyn pursues the trust's termination through the "agreement of all relevant parties" or "by pursuing all reasonable legal recourse for termination of the [SM] Trust and the return of its assets to her ownership." Should Marilyn be successful in appealing the Department's denial, however, the Conditional Agreement is by its own

17

terms void. The Conditional Agreement also is clear that it "does not prohibit [Marilyn] from continuing to contest the Department's determination that the [SM] Trust is a countable resource." Signing the Conditional Agreement was the only way Marilyn could receive Medicaid benefits while she appealed the Department's initial denial.

¶26 By its language, the Conditional Agreement requires Marilyn to take actions beyond the SM Trust's four corners in order to seek its termination.[9] Several other courts have ruled that the "any circumstances" test is limited to the terms of the trust itself. *See Guilfoil*, 162 N.E.3d at 636 (court limiting its review to the "four corners of the trust" and not considering whether beneficiaries "by reason of love but without legal obligation" might make payments towards a grantor's support in the event of a termination) (quoting *Heyn v. Dir. of the Office of Medicaid*, 48 N.E.3d 480, 486 (Mass. 2016)); *see also Spetz*, 190 Misc. 2d at 299, 737 N.Y.S.2d at 526. These positions are supported by a plain reading of 42 U.S.C. § 1396p(d)(3)(B)(i), which specifically limits the "any circumstances" test's applicability to "payment[s] *from* the trust." (Emphasis added.) Moreover, the Conditional Agreement is clear it does not prohibit Marilyn from continuing to contest the Department's determination. It would be both patently unfair to Marilyn and illogical to conclude that the Conditional Agreement permits a payment from the trust's corpus to be made for her benefit when the Department did not and could not have based its denial on the agreement's existence and where the terms of the agreement specifically allow Marilyn to appeal the denial. We conclude that the possibility that actions outside the four corners

---

[9] As mentioned above, Marilyn waived all right to alter, amend, revoke, or terminate the SM Trust; she has no means within the trust's four corners of facilitating its termination.

18

of the trust—actions instigated by the Department in the first place—might, through the trust's termination, render the trust's corpus available to the Medicaid applicant do not implicate the "any circumstances" provision of 42 U.S.C. § 1396p(d)(3)(B).

## CONCLUSION

¶27 For the foregoing reasons, we conclude that there are no circumstances under which payment from the SM Trust's corpus could be made for Marilyn's benefit. We therefore reverse the District Court's Order concluding that the SM Trust is a countable asset pursuant to 42 U.S.C. § 1396p(d)(3)(B) and remand the matter for further proceedings in accordance with this Opinion.


                                                      /S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR